**UNITED STATES of America,**
**Appellee,**

v.

**Richard Wayne WETZEL and Charlotte Kramer, Appellants.**

**No. 73-1274.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1973.

Decided Dec. 4, 1973.

Rehearing Denied Dec. 21, 1973.

Theodore L. Kessner, Lincoln, Neb., for appellants.

Daniel E. Wherry, Asst. U. S. Atty., Lincoln, Neb., for appellee.

Before GIBSON, LAY, and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

Defendant Richard Wayne Wetzel was charged in Count I with interstate fraud by wire in violation of 18 U.S.C. § 1343; in Count II with receiving, concealing, and selling 99 head of cattle that were moving in interstate commerce in violation of 18 U.S.C. § 2317; and in Count III with conspiracy relating to Counts I and II in violation of 18 U.S.C. § 371. Defendant Charlotte Kramer[1] was charged only under Count III. The jury found Wetzel not guilty of Count I and guilty of Counts II and III and Kramer guilty of Count III. The District Court[2] sentenced Wetzel to five years imprisonment each on Counts II and III, the sentences to run concurrently. Defendant Kramer received a suspended

---

1. Sometime during the trial, defendant Kramer apparently married defendant Wetzel. This opinion will refer to the female defendant as Kramer, her name at the time the true bill was returned.

2. The Honorable Warren K. Urbom, United States District Judge, District of Nebraska, presided.

sentence and was placed on probation for four years.[3]

Defendants first argue that the acquittal on Count I for defendant Wetzel necessarily means that no scheme to defraud existed before delivery of the cattle in Nebraska and that defendant Wetzel cannot be found guilty of Count III. Second, defendants claim that the cattle sold by defendant were not stolen or moving in interstate commerce. Rejecting these arguments, we affirm both defendants' convictions.

On May 11, 1972, Wetzel from Nebraska telephoned Mr. William Rogers Martin in Centreville, Mississippi, to order a load of calves. Several telephone calls were exchanged and Martin shipped 99 head from Centreville to Valley, Nebraska, on May 20th. The 99 head were quoted at a price of $20,332.62. The calves arrived in Valley on May 21st, and Wetzel requested the driver to ship them to York, Nebraska, where they were stored for the night.

Wetzel shipped and sold the calves to Lester Harms in Pickrell, Nebraska, on May 22nd. Harms wrote a check payable to Kramer for $19,326.35 for the calves, and both defendants cashed Harms' check at Beatrice National Bank and Trust Company and received in return cash and three cashier's checks.

On May 22nd or 23rd, Wetzel placed another identical order with Martin, who first accepted the offer but later stopped delivery after learning from the Nebraska State Agriculture Department of Animal Husbandry that Wetzel was being investigated on state charges of stealing cattle. On May 28th, Martin traveled to York, met with both defendants, and demanded payment. Wetzel promised Martin to pay him the next day at a restaurant near Waverly, Nebraska. Neither defendant met Martin at any time nor paid him any of the amount due.

■ First, defendants argue that the not guilty verdict for Wetzel on Count I precludes a conviction on Counts II and III for Wetzel and Count III for Kramer. They argue that the "unequivocal finding by the jury forecloses any criminal act over which the United States District Court had jurisdiction because the cattle were not and could not have been 'stolen' (or unlawfully detained) and a part of 'interstate commerce' when the wrongful acts of Wetzel * * * were carried out." Defendants essentially claim that the jury's finding on Count I means that the cattle were not stolen at the time of transportation of them to Nebraska. Defendants factually point out that a dispute over an inclusion of bulls[4] in the load occurred after delivery in Nebraska, and defendant merely refused to pay for the cattle at the time of delivery.

The Government contends that an "acquittal on the fraud-by-wire count does not signify a jury finding that no scheme existed, particularly in light of the jury's guilty verdicts on Counts II and III." Assuming *arguendo* that there is an inconsistency between the not guilty and guilty verdicts, this court has consistently held in accordance with Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932), that "inconsistency of a verdict on separate counts of an indictment does not entitle a convicted defendant to reversal of a judgment of conviction." Coil v. United States, 343 F.2d 573, 576 (8th Cir.), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965). Although much of the same evidence would be involved in the different counts, a finding of not guilty on Count I would not determine the factual issues or the legal

---

3. The District Court also assessed each defendant $347.42 pursuant to 18 U.S.C. § 3006A(f), which represented the fees allowed by the court to defendants' court-appointed counsel at the trial level, since the District Court discovered defendants jointly owned real estate that could be used to pay for their legal representation.

4. Defendants reduced their price on the bull calves to Harms by 50 cents a hundred weight, amounting in all to about fifty dollars.

sufficiency of the evidence under Counts II and III. Coil v. United States, *supra,* at 576, 86 S.Ct. 48, *quoting* Bryson v. United States, 238 F.2d 657, 663 (9th Cir. 1956), cert. denied, 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34 (1957). We reject defendants' first argument.

■■ Second, defendants argue that there was insufficient evidence to find that the calves were stolen and that they were moving in interstate commerce. Defendants state that Martin voluntarily delivered the cattle to Wetzel and that Wetzel refused to pay for the cattle only because of a dispute over the inclusion of bulls in the load, all of which occurred *after* delivery in Nebraska.[5] The Government counters by arguing that assuming that the calves were lawfully acquired by Wetzel, his subsequent conduct established that defendant had the requisite intent to steal at the time of the transportation and delivery and that the cattle were stolen while moving in interstate commerce.

In Stewart v. United States, 395 F.2d 484 (8th Cir. 1968), the defendant rented an airplane, kept it under eventually unauthorized circumstances, and was convicted of violating the Dyer Act, 18 U.S.C. § 2312.[6] This circuit approved a trial court's instruction in that case that stated in part:

> Even if possession of the vehicle is lawfully acquired, the vehicle will be deemed "stolen" if the defendant thereafter forms the intent to deprive the owner of the rights and benefits of ownership, and converts the vehicle to his own use.

Stewart v. United States, *supra,* at 491; *accord,* United States v. McLean, 424 F. 2d 513, 514 (8th Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 89, 27 L.Ed.2d 91 (1970).

Defendants' subsequent conduct clearly provided legally sufficient circumstantial evidence for the jury to find that defendants intended to steal the cattle at the time of the transportation and delivery. Wetzel promised to pay Martin, and neither defendant ever met with him as scheduled nor paid for the calves. The question of intention was for the jury to resolve, and we accept the reasonable inference that they must have made concerning defendants' intention to steal the cattle.

■■ In addition, the jury had sufficient evidence to conclude that the calves were moving in interstate commerce at the time they were stolen. The question of whether the cattle were moving in interstate commerce at the time of the theft was a factual question for the jury to decide. United States v. Briddle, 430 F.2d 1335, 1339 (8th Cir. 1970); Powell v. United States, 410 F. 2d 710, 712 (5th Cir. 1969). Even if the calves were deemed to be stolen only after defendants' failure to pay Martin on May 24th, the cattle were still moving in interstate commerce. Interstate movement does not necessarily cease when property reaches its first destination within a state. We have previously stated that a "sale thereafter may be an incident to the theft and so tied up with it as to constitute the final step of a continuous unlawful scheme." United States v. Briddle, *supra* at 1339 *quoting* Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956). We think that it was well within the jury's province to conclude that the calves were still moving in interstate commerce when defendants failed to pay Martin several days after delivery of the cattle to Nebraska. Obviously the jury concluded that the whole purported purchase of the cattle was in fact a scheme to steal Mar-

5. Of course, on appeal, we accept the view of the evidence and all reasonable inferences in regard to the proof that are most favorable to supporting the jury's verdicts. Hanger v. United States, 398 F.2d 91, 108 (1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L. Ed.2d 124 (1969).

6. Since interpretations of 18 U.S.C. § 2317 are scarce and since 18 U.S.C. § 2312 contains similar language on this issue, Dyer Act cases are used herein to aid in analyzing this case.

tin's calves. The cattle were shipped in interstate commerce to Wetzel under directions to mail a check immediately upon receipt. This Wetzel did not do and, apparently, never had any intention of so doing.

 Considering the facts that defendants received over $19,000 for the cattle and that they own real estate, we think that their financial status allows them to pay also the costs incurred on this appeal, including attorney's fees paid under the Criminal Justice Act.

Judgment of convictions are affirmed with costs assessed against both defendants.