**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph Hubert BARGER, Jr., Defendant-Appellant.**

**Nos. 80–1432, 81–1026.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1981.

Decided March 26, 1982.

As Amended June 2, 1982.

Rehearing and Rehearing En Banc Denied Aug. 17, 1982.

Carleen R. Arlidge, San Jose, Cal., argued, for defendant-appellant; Frank M. Mangan, San Jose, Cal., on brief.

Charles B. Burch, Asst. U. S. Atty., San Francisco, Cal., for the U. S.

Before SKELTON *, Senior Judge, CHOY and REINHARDT, Circuit Judges.

CHOY, Circuit Judge:

This case arises from a district court order denying appellant's request for payment of investigator fees and costs. We affirm.

I. *Facts*

Mr. Frank Mangan was appointed as counsel for Ralph H. Barger, Jr. pursuant to 18 U.S.C. § 3006A(b) in *United States v. Barger, et al.*[1] During August 1979, Mangan was informed that the court would grant advance authorization for an investigator in the amount of $1,000 for each defendant pursuant to 18 U.S.C. § 3006A(e). In September 1979, Mangan submitted a voucher for $1,111.65, $1,000 of which was approved by Judge Conti and Ninth Circuit Chief Judge Browning. In

---

* The Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

1. The case is more commonly known as the Hells Angels trial.

early December, Mangan submitted a request for authorization of an additional $10,000 for investigator fees and costs. Although the specific actions that followed are disputed, it is undisputed that Judge Conti never formally granted the request.

Mangan thereafter submitted two vouchers requesting payment for the services of the investigator. On April 17, 1980, Judge Conti wrote a letter to Mangan indicating that he was not going to approve any investigator expenses above the $1,000 previously authorized. On May 27, 1980, Mangan responded by asking Judge Conti to reconsider his decision and submitted an additional voucher for $3,500. The final denial of Mangan's request was contained in a letter of June 6, 1980 from the district court to Mangan.

Mangan filed a protective notice of appeal after receiving the June 6 letter, and filed a "motion to authorize the payment of investigative fees" in this court. The motion essentially asked Chief Judge Browning to authorize the full amount claimed. Judge Browning construed this motion as a request for administrative relief and declined the request without prejudice to appellant seeking any other relief that was appropriate.

On August 22, 1980, Mangan filed a motion requesting payment of the investigator fees and costs. The total amount then due was $12,789.73. The district court eventually ordered the motion off calendar because of the appeal pending before this court. On October 30, 1980, counsel filed a motion requesting that this case be remanded to the district court "to perfect the record on appeal." The court remanded the case to the district court for a hearing. A hearing was held and on January 15, 1981, the district court entered a written order denying the motion noting Mangan's failure to ob-

tain advance approval for the costs. This appeal followed.[2]

II. *Issues*

   A.  Is it improper for the United States Attorney to represent the district court in this appeal?

   B.  Did the district court err in refusing to certify payment of the investigator fees and costs?

III. *Representation by the United States Attorney*

     Appellant argues that it is improper for the United States Attorney to represent the district court in this appeal.[3] Appellant contends that the representation creates a conflict of interest in all matters the United States Attorney's Office may have presently pending before Judge Conti and therefore Judge Conti should have obtained representation by outside counsel.

Appellant does not cite and we are unable to find any authority for this position. A review of similar cases reveals that such representation by the United States Attorney appears to be a standard procedure. *See In re Derickson*, 640 F.2d 946 (9th Cir. 1981); *United States v. Edwards*, 587 F.2d 29 (9th Cir. 1978); *United States v. Nakamura*, 577 F.2d 485 (9th Cir. 1978); *Christian v. United States*, 398 F.2d 517 (10th Cir. 1968). The situation in this case does not appear to differ significantly from denials of other motions. We note that the United States is the named defendant-appellee (unlike mandamus cases) and has a great interest in the outcome as any money awarded will be paid by the Government.

Under these circumstances we find representation by the United States Attorney's Office to be proper.

IV. *Payment of Investigator Fees*

     Appellant argues that the district court erred in refusing to certify payment

---

2. Neither party has questioned this court's jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We assume that we have jurisdiction. *See In re Derickson*, 640 F.2d 946 (9th Cir. 1981).

3. In its brief, the United States Attorney states that the brief is being filed pursuant to the request of the district court.

of the investigator fees and costs. 18 U.S.C. § 3006A[4] provided in relevant part:

(e) Services other than counsel.—

(1) Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

(2) Without prior request.—Counsel appointed under this section may obtain, *subject to later review, investigative, expert, or other services without prior authorization if necessary for an adequate defense. The total cost of services obtained without prior authorization may not exceed $150 and expenses reasonably incurred.*

(3) Maximum amounts.—Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. (Emphasis added.)

Appellant appears to argue that once the judge approved the $1,000 to Investigator Zurkey, he was in fact finding that payments in excess of the $300 limit would be necessary to provide fair compensation for "services of an unusual character or duration." Therefore all additional charges did not require prior authorization and the judge was compelled to approve the additional expenditures subject only to a finding that the charges provide fair compensation. We disagree.

At the time Mangan requested the additional authorization of $10,000, the district court told him that it wanted to discuss the request; however, no discussion of the request ever occurred. Mangan asserts that instead he talked to one of the district judge's law clerks, who told him that the request had to be more specific. Mangan claims that he had the clerk talk to the investigator himself, and when Mangan heard nothing else from the court he states that he assumed that authorization had been implicitly granted. Even though no formal authorization was granted, Mangan told the investigator to proceed.

Judge Conti stated that he never heard from Mangan again after the court proceeding where he advised Mangan that further discussion was necessary until the voucher was submitted for payment.

The record indicates that Mangan was aware of Judge Conti's desire to approve requests for investigator fees in advance. The fact that he submitted an advance request supports the assumption. In addition, the record shows that Judge Conti stated in open court that he wanted counsel to obtain authorization for investigators' expenses prior to incurring the expenses. Although the statement was directed to counsel for a co-defendant, it was further indication to Mangan, who was present at the time, that such authorization was needed. In addition, the first bill submitted by the investigator totaled $1,111.65 but only $1,000 was authorized for payment. This should have alerted Mangan that Judge Conti intended to abide by the amount authorized in advance. We also note that the investigation totaled approximately $4,000 in additional fees *before* Mangan's December 14, 1979

---

**4.** 18 U.S.C. § 3006A is also referred to as the Criminal Justice Act of 1964, as amended 1970 and 1974.

request for additional fee authorization which disputes his contention that he attempted to obtain prior authorization.

This is an unsettled area of the law. There has been very little judicial interpretation of § 3006A(e). The parties do not cite and we are unable to find any controlling authority.

■ The courts have interpreted the Criminal Justice Act to the effect that control over its administration should be with the judiciary rather than private counsel. *See United States v. Oddo,* 474 F.2d 978 (2nd Cir. 1973); *Christian v. United States,* 398 F.2d 517, 519 (10th Cir. 1968).[5] A reading of the Criminal Justice Act convinces us that Congress intended the courts to control large expenditures for indigent defendants. This is emphasized by the advance authorization requirement and the low amount of the stated limit. In fact, it is not clear from a reading of § 3006A(e) that a judge has the power to approve an expenditure of more than $150 when such expenditure was made without advance authorization.[6] In the House Report on the bill to amend § 3006A concerning subpart (e), it stated:

> Section 1(e)(2) changes corresponding provisions of the 1964 act by *allowing appointing counsel to obtain these services without prior authorization in an amount not exceeding $150*, plus reasonable expenses, if the services and expenses are necessary for an adequate defense and circumstances prevent him from securing prior authorization from the court.

**5.** The court in *Christian* stated:
Although counsel has the primary responsibility to determine if subsection (e) services will be necessary, the proper and effective administration of the Act requires the trial judge to satisfy himself that such services are necessary . . . .
378 F.2d at 519.

**6.** In *United States v. Crim,* 527 F.2d 289 (10th Cir. 1975), the defendant appealed alleging he was denied a fair trial because the trial court failed to authorize more than $300 for his investigation, an amount he claimed was inadequate. The court rejected the claim holding that it could not "reverse a trial court for refusing to authorize the expenditure of investigative funds in excess of the limits prescribed by Congress." 527 F.2d at 296.

Payment, however, is subject to later review and approval by the court.

H.Rep. 1546, 91st Cong., 2nd Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad. News 3982, 3991 (emphasis added.). We are convinced that Congress intended the courts to control expenditures for indigent defendants.[7]

■ A review of the record in this case, somewhat similar cases, and the legislative history of the Criminal Justice Act and § 3006A(e) convinces us that Judge Conti acted well within his discretion in denying payment of the investigator's bill. We decline to accept appellant's contention that the judge's approval of the $1,000 payment constituted implied consent to future expenses subject only to a "fair compensation" requirement. This would remove much of the court's control over the expenses incurred by appointed counsel and be contrary to the wishes of Congress as expressed in § 3006A(e).

Mangan's assertion that Judge Conti never informed him that the request had not been granted does not change the result. It is not unreasonable to put on counsel the burden of determining whether motions have been acted upon. Counsel should not assume requests have been granted simply because he has not been informed that they have been denied. In addition, Judge Conti's expressed desire to discuss the request with Mangan should have alerted him to the possibility of a problem.

**7.** The *Report of the Committee to Implement the Criminal Justice Act of 1964* stated the following concerning investigator fees:

> (e) *Investigative Services.*
> The Committee recommends that the allowances of petitions for investigative services be *strictly limited,* to the extent possible, to those charges necessary in the strictest sense of the word. A provision may well appear in each plan stating as a matter of policy that applications for the ratification of expenses incurred without court approval are not looked upon with favor except in most unusual situations.
> 36 F.R.D. 285, 291 (1965) (emphasis added.)

We find the other arguments made by appellant and amicus to be unpersuasive.[8]

## VI. *Conclusion*

This case presents a question of first impression with little if any helpful authority. A review of the record indicates that Judge Conti's desire to review and authorize expenses for investigators before the expenses were incurred was known to Mangan. His refusal to approve expenses incurred without prior request and in excess of the $150 limit in this case does not mandate a reversal. The order of the district court is AFFIRMED.

REINHARDT, Circuit Judge, concurring in the result:

I agree that we are compelled to affirm the order of the district court, but I do so with great reluctance. The result is harsh. Drastic economic consequences are visited upon an investigator, now deceased, who appears to have acted in good faith at all times. Other district judges might have handled the matter in a different manner and reached a more equitable result. Nevertheless, after considering all of the particular facts and circumstances of this case, I cannot say that the district court abused its discretion. *Cf.*, 7 Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Guidelines for the Administration of the Criminal Justice Act, § A, ch. 3, § 3.02 transmittal 8 (May 15, 1980).

---

**8.** For example, amicus (California Attorneys for Criminal Justice) argues that it was improper for the district judge to deny payment on the ground of Mangan's alleged failure to comply with the court's rules. They cite *In re Derickson*, 640 F.2d 946 (9th Cir. 1981), in which this court held that despite an administrative guideline requiring court-appointed counsel to submit vouchers for payment of fees and expenses within 45 days of final disposition, the district court has jurisdiction to authorize payment of a voucher submitted late. In *Derickson*, the district judge apparently based his decision solely on the ground that the court lacked jurisdiction. The current case is distinguishable in that Judge Conti himself told the attorneys that prior authorization would be required.