**Bernard YBARRA, Petitioner,**

v.

**Charles L. WOLFF, Jr., Director of the Department of Prisons, Respondent.**

**No. CV–R–78–126–ECR.**

United States District Court,
D. Nevada.

Aug. 17, 1983.

See also 555 F.Supp. 40.

Bernard Ybarra, pro se, and James W. Johnson, Jr., Reno, Nev., for petitioner.

Richard Bryan, Atty. Gen., Carson City, Nev., and Calvin R.X. Dunlap, Dist. Atty., Reno, Nev., for respondent.

## ORDER

EDWARD C. REED, Jr., District Judge.

On January 12, 1983, it was brought to the attention of the Court that Petitioner might have adequate funds to reimburse the United States for all or a part of the funds expended for counsel for Petitioner in this proceeding and that a serious question had been raised as to whether Petitioner was entitled to continued representation by appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(f). On January 12, 1983, the Court ordered defendant's appointed counsel to file a report within 30 days as to Petitioner's financial status. On April 4, 1983, a further hearing in the matter was held. The Court at that time entered its order agreeing with the position of the appointed counsel that their participation in this inquiry might represent a conflict of interest. The Court ordered that points and authorities be filed by the United States Attorney's office and by the Federal Public Defender's office in respect to what procedure should be followed in such an inquiry. Petitioner was also permitted to file points and authorities in respect to the question at issue.

Subsequently, points and authorities were filed by Petitioner and by the United States Attorney's office. The latter filed a helpful brief which was of considerable assistance to the Court in resolving these problems. The United States Attorney's office placed itself at the disposal of the Court in the

further inquiry in respect to Mr. Ybarra's resources.

On June 3, 1983, the Court entered its order setting a hearing on the issues in question and ordering that the matter be "referred to the office of the United States Attorney to conduct appropriate inquiry at said hearing." This order was entered on the authority of *United States v. Barger*, 672 F.2d 772 (9th Cir.1982) which indicates that the United States has a great interest in securing the reimbursement of monies advanced by the Government, or which might thereafter be advanced, for representation of persons whose indigency is questioned. The thrust of the *Barger* case is that it is appropriate that the United States Attorney be appointed to conduct the necessary inquiry as to the financial status of Petitioner.

Other courts have recognized the authority of the United States Attorney to make such inquiry. *United States v. Pinckney*, 491 F.Supp. 82 (W.D.Mo.1980). *See also e.g., United States v. Wetzel*, 488 F.2d 153 (8th Cir.1973). *See also United States v. Bracewell*, 569 F.2d 1194 (2nd Cir.1978).

Petitioner was given due notice of the issues which would be considered at the hearing and subsequently given an opportunity to be heard. *See United States v. Bursey*, 515 F.2d 1228 (5th Cir.1975).

The function of the United States Attorney in making the inquiry which was made at the hearing of this matter is to assist the Court in making the finding as to whether the defendant is indigent. In other words, the United States Attorney acts on behalf of the Court to conduct an inquiry into relevant matters at the hearing. This procedure is not inconsistent with the CJA Plan for Nevada. There are provisions in the Plan which permit inquiry to be made by a magistrate or judge in the course of appointment of counsel for indigent criminal defendants and petitioners in cases such as that at bar. The Plan does not address itself to the problem of reimbursement or continued representation, except that it does permit the magistrate to terminate the appointment of counsel and to recommend to the Court that any funds available to a party found not to be indigent be ordered paid as provided in 18 U.S.C. § 3006A(f). The Plan provides for no particular procedure to be followed in determining whether an order should be entered for reimbursement or termination of appointed counsel.

According to a letter from Director Foley of the Administrative Office of the United States Courts to the Chairman of the House Committee on Government Operations, the Administrative Office and the Judicial Conference of the United States are studying criteria for the development of financial data and recommendations on eligibility and ability to contribute. It appears that such information may eventually be provided to the Court through Pretrial Services. However, such criteria have not yet been developed and there is no Pretrial Services plan adopted for this district. There appears to be reasonable authority for proceeding in the manner the Court has in this case and while other guidelines may be developed for handling of these matters in the future, such is not the case at the present time.

On July 13, 1983, the hearing was held on the question of reimbursement and continued representation of Petitioner by appointed counsel. Testimony and documentary evidence were received and arguments presented by the United States Attorney, the Deputy District Attorney of Washoe County, and Petitioner. The Federal Public Defender and the Assistant Public Defender were present at the hearing and provided assistance to the Court. The hearing constituted a full fledged adversarial proceeding with a wide range of inquiry into Petitioner's personal and financial status in order to determine the hardship of repayment on Petitioner or his family. *United States v. Bracewell, supra,* at 1200; *see also United States v. Pinckney, supra.* Appropriate inquiry was made as to the financial needs of Petitioner and his family and as to whether representation was or is beyond the means of Petitioner. *United States v. Cohen*, 419 F.2d 1124 (8th Cir.1969).

The hearing disclosed the following facts.

On August 7, 1978, Petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Subsequently, on November 2, 1979, based upon the affidavit of Petitioner indicating his indigency, a CJA Panel attorney was appointed to represent Petitioner in the habeas proceedings. The affidavit filed by Petitioner in support of his indigency indicated that representation was beyond his means.

Between July 1981 and October 1981 Petitioner received the total cash sum of $22,500 in settlement of an unrelated legal action. Between September of 1981 and January of 1983, $15,000 of this money was invested with Dean Witter Reynolds, a Reno investment firm. A profit of $10,200 was realized on the account during the period subsequent to the investment up to January 1983. Thus, a total of $25,200 appears to have been available from this investment account over the period mentioned. There is also to be accounted for the additional $7500 of the original $22,500 settlement which was not invested with Dean Witter Reynolds.

Since there has not been any specific accounting filed showing withdrawals from the investment account, it is difficult for the Court to account for interim withdrawals up to January of 1983. However, in January of 1983 $12,600 was paid from the Dean Witter Reynolds account to Petitioner's wife, Irene Ybarra, leaving at that time $7,000 in the account. This accounts for $19,500 of the total of $25,200 to be accounted for in respect to the account.

It also appears that Mrs. Ybarra received the balance of the investment account of some $7,000. Other testimony indicated that she received $5,800 in cash and securities to "offset anticipated expenses." The record is unclear as to whether this $5,800 was a portion of the $7,000 which was the balance of the investment account, or whether it came from whatever Mr. Ybarra retained of the $7,500 of the original settlement of $22,500 which was not invested in that account. It is not possible based on this record to reconcile all of these funds. It does appear that after the settlement was made Mr. Ybarra paid out the following sums to his wife or for her benefit from these funds:

| | |
|---|---:|
| Mobile home repairs between September 1981 and August 1982 | $1,500.00 |
| Moving and setup of mobile home at Sun Valley, fall of 1982 | 1,500.00 |
| Down payment on Sun Valley real property, fall of 1982, plus closing costs | 3,500.00 |
| Purchase of Fiat automobile for wife in 1982 | 1,700.00 |
| Auto repair, 1982 | 1,500.00 |
| Moving expenses from Canada to Reno, 1982 | 2,000.00 |
| Sewer hookup, spring 1983 | 360.00 |
| Replacement of roof on mobile home, March 1983 | 2,600.00 |
| Payment of Canadian debts of wife, 1982 | 4,000.00 |
| | $18,660.00 |

The Court has, without success, attempted to reconcile the figures presented to it as against Mr. Ybarra's present claim that he has no assets and Mrs. Ybarra's claim that her assets consist of the following:

| | | |
|---|---:|---:|
| Real property equity | | $ 4,000.00 |
| 1976 Fiat | | 1,700.00 |
| Furniture in storage in Canada (at a charge of $182 per quarter) | | Unknown |
| Dean Witter Account: | | |
|   Margin balance | $3,000.00 | |
|   Securities | 8,000.00 | 11,000.00 |
| House trailer | | 5,000.00 |
| | | $21,700.00 |

At least a minimum of $11,000.00 of Mrs. Ybarra's assets appear to be liquid, being the account at Dean Witter Reynolds.

Mr. Ybarra is incarcerated as an inmate at the Nevada State Prison. His living expenses are nominal.

Mrs. Ybarra claims a take-home pay of $719.00 for each four-week period. It is difficult to reconcile the amount of take home pay against a claimed salary at Harrahs Club of $13,000 per year, even taking into consideration the possibility that there are deductions from her pay such as FICA, group insurance, health insurance and income tax withholding. Mrs. Ybarra has the following monthly living expenses, based on last year's bills:

| | |
|---|---:|
| Utilities (last month) | $ 64.00 |
| Telephone (average) | 15.00 |
| Water (last month) | 13.00 |
| Gasoline (last month) | 60.00 |
| Auto insurance ($157 semi-annually) | 26.00 |
| Grocery and household (last month) | 250.00 |
| Real property payment (last month) | 87.00 |
| Canadian Visa | 80.00 |
| Weinstock's | 31.00 |
| Storage of property in Canada at $182 per quarter | 61.00 |
| Snacks and coffee while visiting petitioner at prison (last month) | 40.00 |
| To petitioner at prison for his expenses | 30.00 |
| | $757.00 |

This accounting does not take into account the fact that the prisoner also has some income from prison related employment. It ignores the $200 paid last month to the lawyer representing Petitioner in an unrelated civil case. It does not include possible car repairs or consideration of the fact that utility bills may be higher than the figure noted in some months and gasoline bills will be lower in other months. Mrs. Ybarra's living expenses of $757 per month, even with the possible adjustments mentioned, are very close to her claimed take home pay of $719 a month.

There is one other approach which might be made to try to determine what Mrs. Ybarra's assets are:

RECEIVED BY MRS. YBARRA BETWEEN JANUARY AND JUNE 1983

| | | |
|---|---:|---:|
| January 1983, from Dean Witter account | $12,600 | |
| Received or retained by Mrs. Ybarra from Dean Witter account | 7,000 | |
| "Possible future expenses" | 5,800 | |
| Sewer hookup | 360 | |
| Replacement of roof on mobile home in March | 2,600 | |
| Mrs. Ybarra's salary at $719 a month for 6 months | 4,314 | $32,674.00* |

MRS. YBARRA'S DISBURSEMENTS

Living Expenses:

| | | |
|---|---:|---:|
| $757 per month for 6 months | $4,542 | |
| Sewer hookup | 360 | |
| Replacement of roof on mobile home | 2,600 | $ 7,502.00 |
| NET TO BE ACCOUNTED FOR | | $25,172.00** |

* Substantially all of these sums were disbursed to Mrs. Ybarra after this Court's inquiry began. Mr. Ybarra had a duty to report his receipt of the subject funds to the Court. He is experienced in litigating matters in this Court and is well aware his entitlement to appointed counsel was dependent upon his indigent status.

** Aside from the real property equity, mobile home, automobile, and furniture in storage in Canada, Mrs. Ybarra admits to having a Dean Witter Reynolds account of $11,000, leaving $14,172 in cash or liquid assets unaccounted for.

Mr. Ybarra claims that his wife was entitled to one-half of the original Dean Witter Reynolds account, that is, $7,500.00, as her separate property to reimburse her for the following:

| | |
|---|---:|
| Four visits at $700 per visit to assist him in conducting the case in which he received the settlement | $2,800.00 |
| Lost wages | 2,000.00 |
| TOTAL | $4,800.00 |

The discrepancy between the $7,500 and the $4,800 is not explained.

The issue before this Court, then, is whether Petitioner should be allowed to divest himself of all of these sums of money and thereby make himself indigent so as to be unable to pay for counsel at the present time and unable to reimburse the Government for past monies expended to pay for his counsel in this case. It is questionable whether he already has succeeded in divesting himself of those funds.

On the witness stand, Mrs. Ybarra admitted that she is holding for the Petitioner one-half of everything she now has in her possession. Therefore, of her present liquid assets be they the $11,000 in the Dean Witter account or a total of $25,172 which is for the most part unaccounted for, one-half is held for Mr. Ybarra. Therefore, it appears that he has adequate funds to reimburse the Government in the amount of $4,726.70 and to pay for the counsel in this case from this point forward without hardship to himself or his family. Representation is not beyond Petitioner's means. Petitioner should be required to pay not only for funds expended for his representation after the

settlement was received in the separate civil case but, in that he has adequate funds to reimburse the Government for the money it advanced for his representation in this case prior to that date, he should be required to reimburse the Government in full for the monies paid by the Government to Johnson and Adams who were his appointed counsel from the CJA panel. *See United States v. Allen,* 596 F.2d 227 (7th Cir.1979).

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That Bernard Ybarra pay to the Clerk of this Court for deposit in the Treasury of the United States as a reimbursement to the appropriation for carrying out the provisions of 18 U.S.C. § 3006A, the sum of $4,726.70.

2. Appointment of counsel for Mr. Ybarra to represent him in this proceeding is revoked.