**In re the Application of Larry Lee JOBE for Payment of Expert Witness Fees.**

**No. C1–91–424.**

Court of Appeals of Minnesota.

Nov. 19, 1991.

John P. Sheehy, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Atty., Toni A. Beitz, Asst. County Atty., Minneapolis.

Considered and decided by NORTON, P.J., and LANSING and SHORT, JJ.

## OPINION

NORTON, Judge.

This is an appeal from a trial court's order for payment of expert fees and services. We remand for further proceedings on the issue of why fees submitted by defense experts were unreasonable.

## FACTS

On December 13, 1988, Larry Jobe was indicted on two counts of first degree murder. The state intended to prove Jobe committed the murders by using a DNA analysis of blood found at the murder scene. Jobe waived his right to a speedy trial to await the supreme court decision in *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989).

In *Schwartz*, the supreme court held that DNA evidence was admissible, but that inconsistent test procedures created foundational inadequacies which prevented admission of the DNA test results in that case. *See id.* at 428. The court's decision essentially required a pretrial hearing to determine the admissibility of specific DNA test results in every case.

Because the defendant in *Schwartz* ultimately pleaded guilty, the Jobe action became one of the first criminal cases in Minnesota where DNA evidence would be used at trial under the *Schwartz* guidelines. Jobe's attorney filed a motion in Hennepin County District Court seeking funds under Minn.Stat. § 611.21 (Supp. 1989) to retain DNA experts for a pretrial admissibility hearing and the trial. The trial court granted permission for Jobe to hire an expert witness in an order filed April 12, 1990. The order limited expert witness fees to $5000.

On June 22, 1990, Jobe's attorney requested an additional $20,000 for DNA experts. Included with his request was Dr. Simon Ford's affidavit estimating expert witness fees for a pretrial hearing on the admissibility of DNA evidence at between $25,000 and $50,000. On July 5, 1990, Jobe's attorney submitted an affidavit to the court stating he expected to call three experts to testify at the pretrial hearing and to continue to consult one non-testify-

ing expert for a total pretrial cost of $19,-400. In this affidavit, Jobe's attorney claimed the experts would charge either $150–$155 an hour or a flat rate for days spent testifying, would expend 90 hours preparing for and testifying at the pretrial hearing and would incur $2400 in travel expenses. Jobe's attorney contacted the chief judge in person a week before the pretrial began and learned no decision had been made regarding his request.

When the pretrial hearing began on July 16, 1990, the chief judge had authorized the trial judge to decide the matter of expert fees. Jobe and his attorney were authorized to hire the three experts and to continue to consult with the non-testifying expert described in the affidavit. When Jobe's attorney inquired, "Your Honor, I assume that I can tell them they will be paid the reasonable going rate for the work?" The judge replied, "You can tell them what the statute says."

The pretrial hearing took twelve days. The state called seven experts; five employed by the FBI and two private consultants. One private consultant charged $150 an hour while the other charged $100 an hour. The more expensive private consultant stated he occasionally gave a discount for a full day of testimony on behalf of a public agency. The defense called three experts who were all private consultants. These experts also gave discounts for full days of testimony. On September 6, 1990, the trial judge issued his order finding the DNA evidence admissible under the criteria set forth in *Schwartz.* Only one defense expert testified at trial. After a jury trial, Jobe was convicted of two counts of first degree murder on October 2, 1990.

On December 20, 1990, Jobe's attorney submitted the bill for expert witness fees to the trial judge. The bill included pretrial and trial expenses totaling over $31,000. On February 8, 1991, the trial judge ordered payment of expert witness fees of $17,892.06. The judge determined that the travel expenses claimed were reasonable and ordered them paid in full, that the hourly rates of $155 and $150 sought by

the defense experts were unreasonable without explanation and ordered each to be paid $100 per hour, and disallowed thirty-eight hours billed by the consulting expert. The judge explained that ten hours of consultation were necessary but the additional thirty-eight only benefitted appellant's attorney and were not necessary for an adequate defense.

## ISSUE

Did the trial court err in awarding only part of the expert witness fees Jobe claimed under Minn.Stat. § 611.21 (Supp. 1989)?

## ANALYSIS

Minn.Stat. § 611.21(a) provides:

Counsel * * * for a defendant who is financially unable to obtain * * * expert, or other services necessary to an adequate defense in the case may request them * * *. Upon finding * * * that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The court may establish a limit on the amount which may be expended or promised for such services. * * * The court shall determine reasonable compensation for the services and direct payment by the county.

No Minnesota court has decided a case involving application of this statute.

The trial court's order pertaining to payment of expert witness fees arose from a special proceeding and is appealable under Minn.R.Civ.App.P. 103.03(g). *See Willeck v. Willeck,* 286 Minn. 553, 554 n. 1, 176 N.W.2d 558, 559 n. 1 (1970). We agree with the county that the district court's determination of reasonable compensation should be reviewed under an abuse of discretion standard. *See Feguer v. United States,* 302 F.2d 214, 241 (8th Cir.1962) ("where government expense is involved, a discretionary standard prevails"); *In re Allen R.,* 127 N.H. 718, 721, 506 A.2d 329, 332 (1986) ("whether the court abused its discretion in refusing to authorize payment"). However, the county's reliance on cases

interpreting Minn.Stat. § 357.25 (1990) to define that discretion is misplaced. Section 357.25 says a judge *"may* allow such fees or compensation as may be just and reasonable" for expert fees (emphasis added). However, section 611.21 mandates the court to pay reasonable compensation that is necessary for an adequate defense. Therefore, once the court has determined that expert services are necessary, its discretion is limited to the determination of what is "reasonable compensation" for those services.

The Illinois Supreme Court interpreted a statute similar to section 611.21 to require compensation "only for expenses that are reasonably necessary to secure testimony concerning a crucial issue in the case," and not "for testimony which, though germane, is unnecessary or redundant." *People v. Kinion,* 97 Ill.2d 322, 337, 73 Ill.Dec. 528, 535, 454 N.E.2d 625, 632 (1983) (citation omitted).

The New Hampshire Supreme Court held that a trial court's refusal to reimburse counsel for fees paid to a psychologist whose testimony was critical to the case of an indigent juvenile was an abuse of discretion. *Allen,* 127 N.H. at 722, 506 A.2d at 332. There was no issue regarding the timeliness of the request for payment nor the necessity of the services. However, the court held that a reasonable amount could be less than what counsel actually paid and could reasonably be limited to the amount that would have been charged by an expert provided by a local mental health agency. *Id.* The court remanded for a determination of what a local mental health agency would have charged, saying that this reflected the trial court's proper concern with cost and the indigent status of the defendant. *Id.*

██ However, a trial court's refusal to reimburse counsel for an indigent defendant's expert fees can be an unconstitutional taking. *See id.* The *Allen* court held that an unconstitutional taking only occurs if an attorney is not reimbursed for necessary and reasonable fees that were paid on behalf of an indigent defendant. *Id.*

[T]he State's obligation to provide ancillary defense services is not a blank check on the public fisc, to be drawn in whatever amount the zeal or caution of counsel may dictate. They provide mechanisms to limit public expenses to what our Constitutions demand; they are not unreasonable burdens on the rights of * * * criminal defendants, or their counsel. It is not, therefore, a taking of counsel's property to deny him reimbursement for the costs of defense services that the trial court has reason to find were unnecessary or unnecessarily expensive.

*Id.* at 723, 454 A.2d at 333.

██ Furthermore, the unique circumstances of this case raise additional concerns regarding procedural due process. Deprivation of property must be preceded by notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Here, Jobe's counsel attempted to obtain prior authorization for the amount of expert fees. In addition, he provided the court with affidavits showing the experts' hourly fees and costs up to the time of the motion. However, the court retained its discretion to decide and ordered appellant to proceed without indicating what amount would be paid. By insisting on making the determination after trial and after counsel had incurred further bills, counsel was deprived of his property before having an opportunity to be heard. Under these circumstances, the trial court bears the burden of showing why appellant's claims for expert fees are unreasonable and unnecessary and must provide Jobe's counsel an opportunity to be heard on the issue. The trial court may determine the appropriate procedure to comply with this directive.

██ In future cases, we strongly urge the district courts and defense counsel to establish what is reasonable compensation before expert fees and services are incurred. *See Kinion,* 97 Ill.2d at 336, 73 Ill.Dec. at 534, 454 N.E.2d at 631 ("We agree * * * that the best practice * * * is * * * to require appointed attorneys to petition the trial court for any amount antici-

pated to be in excess of [the statutory limit] before they spend it, and that attorneys who spend any excess which the court does not authorize should run the substantial risk of not receiving compensation for it."). Further, we agree with the county that the trial court is in the best position to determine what is reasonable compensation. However, we disagree with the county that this determination should be outcome based. Factors such as whether or not the evidence was eventually excluded, whether defendant was acquitted or how effective the expert's testimony actually turned out to be are not determinative. Instead, the standard is reasonable fees necessary for an adequate defense. That is, fees that are reasonable from the point of view of preparing an adequate defense, not from the point of view of the ultimate result.

## DECISION

We remand to the trial court for further proceedings on why the expert fees incurred here were unreasonable and for recalculation, if any, of the amount of reasonable compensation to be ordered.

Remanded.

SHORT, Judge (dissenting).

I respectfully dissent because a trial court's decision under Minn.Stat. § 611.21 (Supp.1989) should not be reversed on appeal absent an abuse of discretion. *See United States v. Bledsoe*, 674 F.2d 647, 668 (8th Cir.1982) (federal appellate courts review grants of funds to defendants to hire experts pursuant to 18 U.S.C. 3006A(e) under abuse of discretion standard); *cert. denied* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Barger*, 672 F.2d 772, 776 (9th Cir.1982) (grant of investigator fees under 18 U.S.C. 3006A(e) is discretionary); *see also Peterson v. City of Elk River*, 312 N.W.2d 243, 246 (1981) (decision to award reasonable expert witness fees in civil case under Minn.Stat. § 357.25 (1980) lies within the trial court's discretion).

In scrutinizing the fee request, the trial court had available information on the ex-

perts' credentials, their full-time salaries, and the time entries and hourly rate charged by Jobe's attorney. The trial court concluded (1) hourly rates of $155 and $150 were unreasonable and ordered payment of $100 per hour, and (2) only ten of the forty-eight hours claimed by the consulting expert were compensable because the disallowed hours benefitted the attorney and not Jobe. The trial court's reasons for reducing the requested fees were articulated in its memorandum and Minn.Stat. § 611.21, subd. (a) does not require a more detailed explanation.

Where the issues have been decided by the trial court, we are not required "to reverse simply because the trial court might have gone into more detail in the explanation of its findings." *See Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977). Under these circumstances, the reduction was not arbitrary and a remand on this issue is a waste of judicial time and taxpayers' money.

I am troubled that despite counsel's efforts to obtain prior approval of the expert fee expenditures, the trial court never indicated it found the experts' hourly rates or the planned consultant hours unreasonable. If the trial court had established a maximum hourly rate or set a ceiling on fees initially, Jobe might have been able to avoid incurring the disallowed expenses. Nonetheless, the legislature specifically gave the trial court the responsibility to determine reasonable compensation for expert services. Minn.Stat. § 611.21, subd. (a) (Supp.1989). The trial court was in the best position to assess the value of the services rendered by each of Jobe's experts and the assistance necessary to prepare his attorney for this case compared to future DNA cases. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 629 (Minn.1988). Given its vantage point, the trial court did not abuse its discretion by awarding only part of the expert witness fees claimed. I would affirm the trial court's decision.