(No. 56490.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARGARET ANN KINION (Braud, Warner, Neppl & Westensee, Ltd., Appellee).

*Opinion filed September 23, 1983.*

324

Tyrone C. Fahner, Attorney General, of Springfield, and James T. Teros, State's Attorney, of Rock Island, and L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gerry R. Arnold, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Walter D. Braud and John Malvik, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The defendant in this case, Margaret Ann Kinion, was convicted in the circuit court of Rock Island County of 63 counts of theft. This appeal concerns the propriety

of an award of attorney fees and expert witness fees to Walter Braud, a lawyer who had originally been retained by defendant to represent her for a stated compensation but was later appointed by the circuit court to represent her after she was declared indigent.

Shortly after the indictment in this case was filed in November 1979, Mrs. Kinion retained Braud to defend her, agreeing to pay Braud a fee of $20,000 and giving him a second mortgage on her house to secure the debt. At the time this agreement was entered into Mrs. Kinion was employed by Rock Island County as an accountant at an annual salary in excess of $20,000, but she was suspended from that job upon her arrest and from that time on she received neither salary nor unemployment benefits. Subsequently Mrs. Kinion deeded her entire interest in her house to respondent.

At some point prior to May 1980 Braud decided to raise the issues of insanity and fitness to stand trial on defendant's behalf and engaged the services of Drs. Paul Hauck, Bruce Danto and Lawrence Freedman as expert witnesses. (A fourth expert witness, Dr. Joseph Maciejko, was engaged later and billed Braud only for court appearances in September and November 1980. A fifth expert, Dr. Paul Skinner, also billed Braud.) On May 30, 1980, Mrs. Kinion filed a petition for payment of psychiatric expenses, stating that she could not pay them herself as she had no funds or income. On June 12, 1980, she filed a motion in which she asserted she would be unable to pay the costs of her defense, including attorney fees, and requested the court to declare her indigent. She also moved to have her bail reduced and to have the money thus freed used to defray her expenses, with the permission of the person who had loaned her the bail money.

On June 16, 1980, a hearing was held on all of Mrs. Kinion's motions. The motion relating to reduction of

bail was denied, although the court ordered the county to pay the costs of Mrs. Kinion's psychiatric examinations to the extent she had no assets with which to pay them. No action was taken on her indigency petition, although trial was set to begin September 8, 1980.

On September 3 and 16, 1980, Mrs. Kinion filed new motions for declaration of indigency and payment of expert witness fees. A hearing was held on the indigency motion on September 19, but the court reserved its ruling. On October 16, 1980, after the bank which held the first mortgage conducted a foreclosure sale of her house, Mrs. Kinion filed another motion for declaration of indigency, followed by an affidavit of assets and liabilities. The court held a hearing on October 23, 1980, and declared her indigent as of September 3.

During September and October 1980, the court was considering a motion relating to Mrs. Kinion's fitness to stand trial. The court wished to conclude all of the proceedings in the case by December 1, 1980, because the State's Attorney for Rock Island County, who was prosecuting the case, was to become a judge on that date, and the circuit judge felt that to allow the public defender adequate time to familiarize himself with the case and prepare a defense would make it impossible to complete the proceedings by that date. At the hearing on October 23, 1980, therefore, the court appointed Braud as counsel "for the conclusion of the proceedings in this case."

Trial commenced on November 3, 1980, after the court determined that Mrs. Kinion was fit to stand trial. The trial lasted until December 2, 1980, on which date Mrs. Kinion was found guilty on all counts. On December 22, 1980, Braud filed a request for attorney fees and costs in the amount of $28,606.35 and expert witness fees of $10,233.80. The circuit court entered an order on May 6, 1981, awarding fees and costs of $6,500 based on an effective appointment date of September 3, 1980, and

expert witness fees of $9,073 based on an accrual date of May 30, 1980. The State's Attorney of Rock Island County appealed, contending that Braud was not properly appointed as defense counsel, and, in the alternative, that no fees for services rendered prior to the actual appointment date of October 23, 1980, could be awarded against the county and that any fees so awarded were limited by statute to $1,000 for attorney fees and $250 for expert witnesses. The appellate court affirmed the award of attorney fees and reversed the award of expert witness fees, remanding the case to the circuit court for recomputation of those fees based on an accrual date of September 3, 1980, and without regard for the statutory $250 limit. 104 Ill. App. 3d 30.

The State's first argument to this court is that Braud is not entitled to any attorney fees because his request for appointment by the court was simply an attempt to salvage a private fee arrangement that had soured and also because Braud had misled the trial court by representing to it that he would not seek recompense from the State for his services. We agree that Braud should not receive any fees from Rock Island County, and we reverse the appellate court decision allowing fees to him.

Certain statements Braud made to the court estop him to claim any attorney fees. One of the representations here at issue is a statement, set forth in a motion dated June 12, 1980, and referred to by the State's Attorney orally before the court four days later, that Braud "will continue to represent your defendant without cost, and that no application will be made to the State for payment of attorneys [sic] fees." This appeared in a motion filed for the purpose of having Mrs. Kinion declared indigent. The court did not declare Mrs. Kinion indigent until four months later, the State having objected that she was not indigent because she had a substantial equity in her house and the senior mortgagee having not

yet held any foreclosure sale of the house.

In arguing this motion before the court on June 16, 1980, Braud stated to the court:

"We are asking then I think, moving on to the last portion of this, that Margaret be declared indigent, \*\*\* We are not asking that the court pay for or appoint counsel. We are accepting as part of the risks in being an attorney that occasionally our clients are unable to pay for us and we are not prepared to decide between Margaret Kinion and the next client as to which of those clients are more worthy. We are not asking to leave this case, nor are we prepared to abandon Margaret at this time in her life, but we cannot do an adequate job for Margaret without the psychiatric testimony. \*\*\*"

This statement was immediately followed by a request that the court order the State to pay for the defense's psychiatric expenses. It was preceded by a request, which the court denied, that her bond be reduced and the reduction applied toward payment of her psychiatric expenses.

Our criminal code provides that, in the event counsel other than the public defender is appointed by the court in a felony case, counsel shall be paid a "reasonable" fee in accord with a formula based on time spent and services rendered. (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(c); see *People v. Johnson* (1981), 87 Ill. 2d 98.) No exceptions are mentioned in the statute, and we would ordinarily have no quarrel with the general statement in *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 29, that "the court's \*\*\* power to appoint counsel also necessarily includes the power to enter an appropriate order ensuring that counsel do not suffer an intolerable sacrifice and burden and that the indigent defendants' right to counsel is protected" and that in *In re Petition for Fees* (1981), 93 Ill. App. 3d 848, 853, *aff'd sub nom. People v. Johnson* (1981), 87 Ill. 2d 98, that "[a] reasonable fee infers at least some compensation." However, it has been recognized that the costs which our statute permits attorneys to recover in cases

which require substantial investments of time and effort can be a very significant burden on county finances. (*E.g., In re Petition for Fees* (1981), 93 Ill. App. 3d 848, 854 (Craven, J., specially concurring), *aff'd sub nom. People v. Johnson* (1981), 87 Ill. 2d 98.) For this reason circuit courts must exercise discretion in selecting appointed counsel, and should appoint the public defender whenever that course is feasible and not manifestly unfair to the defendant and would not lead to an undue delay in trial. This presupposes that the court is informed as fully as possible as to all relevant considerations, including whether private counsel is willing to volunteer his services, at the time it must act.

In this case the trial court knew in September 1980 or earlier that the State's Attorney was an unopposed candidate for a judicial office, and would be unable to participate in the trial after December 1 of that year, when he would take the bench. As the court explained in its 1981 order awarding fees and costs, its decision on October 23, 1980, to appoint Braud rather than the public defender was based on this, in combination with its desire not to risk having to delay the trial in December to allow a new State's Attorney to familiarize himself with the case (which involved 63 criminal counts and 21 witnesses and, as it turned out, took more than a month to try) and its fear that the public defender, who had not as yet been asked to undertake any preparation, would, if appointed in the latter part of October 1980, be unable to prepare Mrs. Kinion's case in time to finish the trial by the beginning of December. No action had been taken on the June indigency petition, to which the State objected that Mrs. Kinion was not indigent and as to which the court concluded that it was uncertain at that point how much equity would remain in her house after the first mortgage on it had been foreclosed and the house sold. However, the bank which held the first mortgage on Mrs. Kinion's house had already begun foreclosure proceedings, and as Braud himself stated

to the court on June 16, "[w]e feel we have a good fix on what its value is because we have been vigorously trying to sell that house." In our judgment, the court, in the exercise of ordinary prudence, should have requested an early appraisal of the house and a statement of assets and liabilities for purposes of ruling on the indigency petition and deciding who to appoint as counsel had it realized that Braud would seek fees, rather than allowing so much time to elapse before resolving the question of Mrs. Kinion's indigency that appointment of the public defender was no longer feasible. Our view of the record is that the statements made by Braud in June, although no doubt not made for that purpose, led the court to believe that it had more time to rule on the petition than it actually had and thereby induced it not to act at that time.

As Braud points out, the representations made by a party against whom an estoppel is sought must be such that reliance on them by others is foreseeable, and the party seeking the estoppel must have relied on them to its detriment. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 330; *Dill v. Widman* (1952), 413 Ill. 448, 455-56.) Fraudulent intent is not required (*Dill v. Widman* (1952), 413 Ill. 448, 456), and there is no evidence that there was any such intent here on the part of Braud. However that may be, it was a foreseeable if not a natural interpretation of Braud's forthright statements that if appointed in place of the public defender he would bill the county only for expert witness fees, for which the county would have been liable anyway, and that the county would bear no out-of-pocket expense by reason of his continued representation of Mrs. Kinion. The court's failure to take steps to curtail that representation and bring in the public defender while there was still time to do so was traceable to that understanding and would not or should not have occurred otherwise. We believe that this was sufficient to call forth an equitable estoppel, and we hold that Braud was precluded from seek-

ing attorney fees from Rock Island County.

There is an additional reason for denying attorney fees in this case. The record reveals that although Mrs. Kinion had earlier given Braud a second mortgage on her house for the purpose of securing a $20,000 fee, Braud informed the court in his June 12 motion that Mrs. Kinion had transferred her equity in the house, which he estimated at $8,000, to him and declared orally before the court on June 16 that while he "would appreciate receiving the balance due" on the $20,000 if she should somehow come up with the money, "[we] agreed with her that we would accept the value in the house against the amount of the fees that she owed us *** [and if] we didn't receive those fees we would take the value in the house which was substantially less than our charges and expenses would be." We interpret this as meaning that Braud agreed not to require Mrs. Kinion to pay the difference in the event the amount of the equity fell short of $20,000 but would content himself with the equity, whatever that turned out to be, and would leave any further payment to the good graces of Mrs. Kinion.

Where a client and his attorney have an express contract for compensation, that contract will control the amount of compensation due the attorney from the client, and *quantum meruit* principles are not involved (*Laff v. Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, 310; *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 710; *Barnes v. Barnes* (1922), 225 Ill. App. 68, 74-75), at least where the fee provided for by the contract was not excessive (see *In re Kutner* (1979), 78 Ill. 2d 157) or fraudulent. In this case, while Braud realized nothing from the assignment of Mrs. Kinion's equity in her house, that was no less than he bargained for, as the possibility that the outstanding senior mortgage would absorb all the equity was not beyond contemplation in view of the difficulty Braud knew a realtor was experiencing in trying to sell the house at the time he agreed to accept the assignment in

lieu of further payment. In fact, on the basis of Braud's statement on June 16 that the equity in the house, however small, was the only source of funds Mrs. Kinion was realistically likely to have, this arrangement does not strike us as such a bad deal, even with the risk that the equity might turn out to be insubstantial. Braud was agreeing, in essence, to take his chances with the house then and there, rather than having to foreclose a mortgage at a later date and hoping, in a time of recession, that there would still be value in it.

As Mrs. Kinion would not have been required to pay her attorney further compensation, we do not understand why such a burden should fall on the county, which was not a party to the contract. The fee provisions of the statute concerning appointed counsel do not, in our judgment, require such a result, for they apply only where the terms of payment are not elsewhere provided for and have their genesis in the appointment. As an attorney has the right to withdraw from a pending case for failure to receive his fee only when the client deliberately withholds it (87 Ill. 2d R. 2—110(c)(1)(F)), Braud would have been under an obligation to continue representing Mrs. Kinion for the stated compensation and should not be permitted to succeed, by reason of an appointment, to rights his contract did not give him against parties which it did not bind.

With respect to the fees for expert witnesses, we note that the county would be responsible for paying for any such witnesses the public defender might have required, and thus is not harmed by being liable instead for such expert witness fees as are reasonable. We therefore address only the contentions advanced by the State that compensation cannot exceed $250 and cannot be had for expenses incurred before October 23, 1980.

The statute concerning expert witness fees appears to make such fees available to appointed counsel only in capital cases and only up to the amount of $250 per defendant.

(Ill. Rev. Stat. 1979, ch. 38, par. 113—3(d).) However, the State has not raised any objection to the fee petition based on the language in the statute which indicates that the fees can be awarded only in capital cases, and we agree with the appellate court that the judiciary possesses a limited power to exceed the $250 limit set forth in the statute.

The courts of this State have observed on several occasions that expert witnesses such as medical doctors and psychiatrists are often essential to the defense of indigent defendants in criminal proceedings, particularly where issues are raised concerning sanity and fitness to stand trial, and that these witnesses are not expected to donate their services but must usually be offered a substantial fee as compensation for time spent in making necessary findings and diagnoses and appearing to testify. (*People v. Watson* (1966), 36 Ill. 2d 228, 233-34; *In re Petition for Fees* (1981), 93 Ill. App. 3d 848, 852, *aff'd sub nom. People v. Johnson* (1981), 87 Ill. 2d 98; see also *People v. Glover* (1971), 49 Ill. 2d 78 (expert witness' fee recoverable only if the expert's testimony is necessary to prove a crucial issue in the case); *People v. Vines* (1976), 43 Ill. App. 3d 986 (same).) In *People v. Watson* this court held that the trial court was required by the sixth amendment right to summon witnesses (U.S. Const., amend. VI; Ill. Const. 1870, art. II, sec. 9) to permit an indigent defendant to call a handwriting expert at county expense where he did not have an attorney and it was shown that the expert's testimony was necessary to support the defendant's contention that he did not forge a check. The court reasoned that since the defendant himself had no funds and a *subpoena* would be insufficient to compel the expert to do more than simply appear before the trial court, requiring the State to pay the witness' fee was the only way of assuring that while "the defendant is afforded the shadow of the right to call witnesses, he is [not] deprived of the substance." 36 Ill. 2d 228, 233.

It is no doubt true that Rock Island County, in the words of the appellate court, "already bears an onerous financial burden" (104 Ill. App. 3d 30, 37), and we realize that, with regard to attorney fees, appointed counsel traditionally bore the burden of representing indigent defendants as a duty incident to the privilege of practicing law (*e.g., People v. Johnson* (1981), 87 Ill. 2d 98, 102; *People v. Sanders* (1974), 58 Ill. 2d 196, 199). However, the trend in Illinois and other States has been to recognize the heavy burden that such representation places on both private attorneys and counties by allowing appointed counsel reasonable attorney fees for representing indigents rather than adhering rigidly to numerical upper limits. (See *People v. Johnson* (1981), 87 Ill. 2d 98, 104-05, and cases cited therein; see also *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24.) In our judgment, rigid adherence to a numerical limit is even less justified with regard to expert witness fees, in view of the fact that the county would have to pay reasonable fees for any expert witness the public defender chose to engage. Limiting a private attorney to $250 for expert testimony in a case in which the public defender would have reasonably been required to spend more would result in a windfall to the county because private counsel had been appointed. Such a result seems arbitrary and unfair, and its effect would no doubt be to encourage at least some private attorneys who have already devoted time and effort to a case to refrain from calling additional experts to testify or to seek leave to withdraw should the costs of trial begin to appear high. We do not believe the legislature intended to bring this about, particularly in light of the fact that the Code of Criminal Procedure of 1963 contains parallel provisions, effective at the time the experts in question here were engaged, mandating the appointment of at least one medical expert of defendant's choice to examine the defendant at the county's expense and without any limit as to the amount of the

expense whenever the defendant's physical or mental fitness is at issue. Ill. Rev. Stat. 1981, ch. 38, pars. 104—13(a), 104—13(b), and especially 104—13(e).

We therefore interpret the $250 limitation set forth in section 113—3(d) of the Code of Criminal Procedure of 1963 not as a rigid upper boundary but as a general caution to trial courts that expert fees in excess of that amount are frequently not reasonably required to establish points necessary to a client's defense and as a warning that any excess which is requested should be scrutinized for abuse with special care. We agree with the appellate court that the best practice, although it was not followed here, is, where feasible, to require appointed attorneys to petition the trial court for any amount anticipated to be in excess of $250 before they spend it, and that attorneys who spend any excess which the court does not authorize should run the substantial risk of not receiving compensation for it.

There remains the question of whether Braud is entitled to expert witness fees incurred before October 23, 1980, the date he was appointed by the trial court, or before September 3, 1980, the date as of which the court declared Mrs. Kinion indigent. Ordinarily we would discourage circuit courts from awarding expert fees prior to the time the defendant is declared indigent and the appointment of counsel is made. In this case, however, even though the court concluded that "there was no showing of indigency prior to September 3, 1980," it entered an order on June 16, 1980, which required the State to pay for Mrs. Kinion's expert witnesses insofar as their fees could not be paid out of the proceeds from the sale of her house. As we have already concluded that the court could and should have determined the question of indigency at that time, we hold, only in this case, that fees could properly have been awarded from that date.

We therefore remand the cause to the trial court for re-

computation of the amount of expert fees which Braud may recover based on an accrual date of June 16, 1980. We observe in so doing, however, that because awards of expert witness fees are intended merely to compensate counsel for reasonable expenses and should not have the effect of impoverishing either side, private counsel should as a rule be awarded no more expenses than the public defender would incur in a similar case; they should be compensated only for expenses that are reasonably necessary to secure testimony concerning a crucial issue in the case (*People v. Glover* (1971), 49 Ill. 2d 78), and should not be reimbursed at county expense for testimony which, though germane, is unnecessary or redundant. While we do not intimate that it was unreasonable *per se* for Braud to introduce four psychiatrists to testify to Mrs. Kinion's sanity and fitness to stand trial and submit bills for a fifth witness, we have our doubts that fees in excess of $9,000, or more than 36 times the statutorily prescribed limit applicable to a single defendant, were called for in this case regardless of what accrual date is used. We trust that the circuit court will take account of this and assess fees in a reasonable amount.

We reverse both the appellate court and the circuit court. The cause is remanded to the circuit court, however, for an award of expert witness fees based on a starting date of June 16, 1980, consistent with what is said in this opinion.

*Judgments reversed;*
*cause remanded,*
*with directions.*