THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PRISCILLA EVANS, Defendant-Appellant.

First District (5th Division)   No. 1—93—0687

Opinion filed March 24, 1995.

Jenner & Block, of Chicago (J. Kevin McCall and Kenneth A. Wittenberg, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

## BACKGROUND

The defendant-appellant Priscilla Evans was convicted of murder for the January 1986 killing of her husband. That conviction was reversed on appeal and her case remanded for a new trial. In her second prosecution, the defendant eventually pleaded guilty to voluntary manslaughter.

In that second prosecution, the defendant retained a psychiatrist to render an opinion regarding her mental state at the time of the killing. Subsequently, she moved the circuit court pursuant to section 113—3(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 113—3(d) (now 725 ILCS 5/113—3(d) (West 1992))) to order the Cook County treasurer to pay that psychiatrist's fee. The circuit court denied that motion, refusing to award any fees whatsoever. For the reasons set forth below, we reverse the circuit court's denial of the defendant's motion and remand for the purpose of determining a reasonable fee.

## FACTS

It was undisputed at the defendant's March 1987 trial that the defendant shot her husband to death on January 26, 1986. The facts showed that on the night of the shooting, the defendant's husband had become intoxicated. Immediately before the shooting, he threatened the defendant and, as he took a step toward her, she shot him. There was no evidence that he was armed with a weapon at that time. The facts also showed that the defendant's husband regularly subjected her to severe physical and mental abuse. A jury convicted the defendant of murder and the circuit court entered judgment on that verdict. The court subsequently imposed a 20-year term of imprisonment.

The defendant appealed. Her conviction was reversed and the case remanded for a new trial because of improper jury instructions. (See *People v. Evans* (1989), 182 Ill. App. 3d 874, 538 N.E.2d 726.) The State then appealed the reversal of the defendant's conviction to the supreme court which affirmed the appellate court in the consolidated case of *People v. Shields* (1991), 143 Ill. 2d 435, 575 N.E.2d 538.

In preparation for her retrial, the defendant retained Dr. James L. Cavanaugh, Jr., a psychiatrist widely used as an expert witness in criminal trials, to provide expert testimony regarding her mental state on the night of the shooting. Dr. Cavanaugh began his examination of the defendant on November 8, 1991. After reviewing police reports, psychiatric records, and the defendant's trial testimony, he

interviewed her and administered psychological tests. He subsequently issued a written report in which he opined that she suffered from a condition known as the battered woman syndrome on January 26, 1986, and therefore "acted in self defense" in shooting her husband.[1]

At a March 18, 1992, status hearing in her second prosecution, the defendant moved the circuit court in writing, pursuant to section 113—3(d) of the Code of Criminal Procedure, for payment of Dr. Cavanaugh's fee "in the amount actually incurred, up to $8,250." This estimate was based on 50 hours of services at an hourly rate of $165. As of the date of the motion, Dr. Cavanaugh had rendered services in the amount of $7,989.

The defendant's memorandum in support of her motion averred that Dr. Cavanaugh's testimony would be crucial at trial because an expert opinion regarding her state of mind at the time of the shooting would be necessary in establishing a theory of self-defense based on battered woman syndrome. It further averred that the defendant was indigent and consequently unable to pay his fee. The defendant appended to her motion an affidavit in which she attested to her indigence. The court reserved its ruling on the defendant's motion until the next scheduled status date, March 30, 1992.

On March 30, 1992, the court, without hearing argument, denied payment for any of Dr. Cavanaugh's fee:

"I'm going to deny your motion here seeking $8,250.00 for Dr. [C]avanaugh.

Basically for basically [sic] one week's work, I think the amount of money is excessive. I think the hours are padded. I think Dr. [C]avanaugh, or somebody, has padded his hours here.

So, the defendant's motion for $8,250.00 for one week's work is denied."

The court thereafter set September 21, 1992, as the trial date.

Trial did not commence on September 21. Plea negotiations had occurred in the intervening time, and on October 9, 1992, the defen-

---

[1]The battered woman syndrome is a type of post-traumatic stress syndrome which describes a pattern of severe physical and psychological abuse inflicted upon a woman by her mate and helps to explain actions of a woman subjected to such abuse. (L. Walker, The Battered Woman 55—70 (1979).) Courts which allow expert testimony relating to the battered woman syndrome do so for the purpose of explaining why the abuse a woman has suffered causes her to reasonably believe that her life is in danger and that she must use deadly force to escape her abuser. See *People v. Minnis* (1983), 118 Ill. App. 3d 345, 356, 455 N.E.2d 209, 217; see also Annot., 18 A.L.R.4th 1153 (1982).

dant pleaded guilty to voluntary manslaughter (now second degree murder). She was sentenced to time served. Dr. Cavanaugh consequently did not testify in court.

On November 2, 1992, the defendant renewed her motion for payment of Dr. Cavanaugh's fee. She attached to that written motion, which was substantially identical to her March 18 motion, a final itemized bill for $10,069, based on 65.75 hours at the average hourly rate of $153. She also appended another affidavit attesting to her indigence and an affidavit by Dr. Cavanaugh, attesting that he expended 65.75 hours in examining the defendant and in preparing to appear as her expert.

On January 12, 1993, the circuit court heard argument on the defendant's motion. The defendant restated the arguments made in her written motion and the State responded[2] that the motion should be denied because the defendant retained Dr. Cavanaugh before moving the court for fees, that some of the tests which he performed had been previously conducted, and that the fee was "exorbitant." The State did not dispute that the defendant was indigent or that Dr. Cavanaugh was retained to provide testimony regarding a crucial issue in the case.

After hearing the parties' arguments, the court again completely denied the defendant's application, stating:

"The likelihood of [this case] going to a second jury trial was very small. I watched you in the past when I denied your request for fees. [The fee] was unreasonable and the doctor's four pages of hundreds of entries is unreasonable and just because Priscilla Evans can go out there and place a responsibility on the tax payers of Illinois. This bill was unreasonable before when it was submitted to me. It's unreasonable now. You were warned repeatedly that it was unreasonable. There was an almost extraordinarily small likelihood that Dr. Cavanaugh would come to court on this case. You wished to, for whatever reasons, and Priscilla Evans wanted to absorb that risk. Now the people that absorb that risk should pay for it and one of those persons is Dr. Cavanaugh. So the risk is on Dr. Cavanaugh. The risk is on Priscilla Evans and the risk is on your law firm and don't try to transfer it to me.

I told you in the past and I tell you now it's an unreasonable bill. I won't approve it.

The second motion for fees is denied."

On appeal, the defendant seeks a reversal of the circuit court's order and a remand with a direction to enter an order granting Dr. Cavanaugh's fee in the full amount of $10,069, or, alternatively, a remand with a direction to enter an order granting a reasonable fee.

---

[2]The record before us lacks any written response by the State.

DISCUSSION

The defendant maintains that the trial court abused its discretion in completely denying her motion for Dr. Cavanaugh's fee because she established both her indigence and the necessity of Dr. Cavanaugh's services in establishing a theory of self-defense based on the battered woman syndrome. She also contends that if section 113—3(d) of the Code of Criminal Procedure were construed to invest the trial judge with discretion to deny reimbursement for expert's fees even where indigence and the necessity of the expert are shown, that provision would be unconstitutional because it would permit the trial judge unfettered discretion to withhold fees and thereby deny defendants access to expert testimony. In addition, defendant urges that such a result would be unconstitutional because it would give the State an undue advantage over the defendant due to its "unlimited means and power to retain experts."

The State does not dispute the defendant's contention that once indigence and necessity are established the court may not withhold fees. Instead, it claims that Dr. Cavanaugh's services were unnecessary because the defendant eventually pleaded guilty (and Dr. Cavanaugh therefore was not called upon to testify); because the defendant herself could have testified to the abuse she suffered; and because another expert had previously determined that the defendant suffered from the battered woman syndrome and would have been available to testify. During oral argument the State also maintained that the defendant is precluded from recovering expert's fees because of her failure to seek the court's authorization in advance of Dr. Cavanaugh's retention.

There can be no dispute that the State must disburse funds to pay for the reasonable fees of necessary expert witnesses on behalf of indigent felony defendants. Section 113—3(d) of the Code of Criminal Procedure of 1963 provides:

> "In *capital cases*, in addition to counsel, if the court determines that the defendant is indigent the court may, upon the filing with the court of a verified statement of services rendered, order the county treasurer of the county of trial to pay necessary expert witnesses for defendant reasonable compensation stated in the order *not to exceed $250* for each defendant." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 113—3(d) (now 725 ILCS 5/113—3(d) (West 1992)).)

Although, on its face, section 113—3(d) applies only in capital cases, and only up to $250, our supreme court has interpreted it more broadly.

In the seminal case of *People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645, the supreme court construed section 113—3(d) to also extend to indigent defendants charged with noncapital felonies.[3] (*People v. Watson*, 36 Ill. 2d at 234, 221 N.E.2d at 648.) The court grounded that extension beyond the express statutory language on the constitutional right to compel the attendance of witnesses, stating that "it is at once apparent that the right to summon witnesses is fundamental to our legal system." (*People v. Watson*, 36 Ill. 2d at 233, 221 N.E.2d at 648; see also U.S. Const. amend. VI; Ill. Const. 1870, art. II, § 9; Ill. Const. 1970, art. I, § 8.) The court reasoned that if it failed to so construe section 113—3(d), noncapital felony defendants "[would be] afforded the shadow of the right to call witnesses, [but would be] deprived of the substance [of that right]."[4] *People v. Watson*, 36 Ill. 2d at 233, 221 N.E.2d at 648.

The court in *Watson* stated that "necessary expert witnesses" within the meaning of section 113—3(d) were those whose opinions would "go[ ] to the heart of the defense." (*People v. Watson*, 36 Ill. 2d at 234, 221 N.E.2d at 649.) In *People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367, the supreme court clarified *Watson*, stating that for entitlement to expert fees to arise, "there must be some showing that [the expert's services are] necessary to prove a crucial issue in the case and that the lack of funds for the expert will therefore prejudice defendant." *People v. Glover*, 49 Ill. 2d at 82-83, 273 N.E.2d at 370.

In *People v. Kinion* (1983), 97 Ill. 2d 322, 454 N.E.2d 625, the supreme court held that the "not to exceed $250" language in section 113—3(d) was not "a rigid upper boundary." Instead, indigent defendants were entitled to "reasonable" fees for necessary expert witnesses. (*People v. Kinion*, 97 Ill. 2d at 336, 454 N.E.2d at 631.) The court predicated this interpretation on its observation that the $250 limitation appeared inequitable when one considered that, although indigent defendants represented by appointed private counsel would

---

[3]For the sake of clarity, we note that at the time of *People v. Watson* the provision now codified as section 113—3(d) of the Code of Criminal Procedure was then codified as section 113—3(e).

[4]Almost 20 years after *Watson*, the United States Supreme Court in *Ake v. Oklahoma* (1985), 470 U.S. 68, 83, 84 L. Ed. 2d 53, 66, 105 S. Ct. 1087, 1096, held that, as a matter of due process, States must provide indigent defendants with access to psychiatric experts ("We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense").

be subject to it, indigent defendants represented by the public defender would not. A county would be·required to pay a reasonable fee, possibly in excess of $250, for any expert witnesses retained on behalf of defendants represented by the public defender. *People v. Kinion*, 97 Ill. 2d at 335, 454 N.E.2d at 631.

Our supreme court has most recently reviewed the denial of a motion for expert's fees under section 113—3(d) in *People v. Lawson* (1994), 163 Ill. 2d 187, 644 N.E.2d 1172. There, the trial court denied the indigent defendant's motion for funds to retain his own fingerprint and shoe print experts even though fingerprints and shoe prints constituted the State's strongest evidence linking him to the scene of a murder. (*People v. Lawson*, 163 Ill. 2d at 218-19, 644 N.E.2d at 1187.) On appeal, the State cited *People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367, in support of its argument that the circuit court properly denied the defendant's motion because he failed to either name the specific experts he intended to retain or to give an estimate of their fees. *People v. Lawson*, 163 Ill. 2d at 222-23, 644 N.E.2d at 1189.

The supreme court in *People v. Lawson* held that the circuit court abused its discretion in denying the defendant's motion, finding that both the indigence and necessity of the expert prongs of section 113—3(d) had been met. In so holding, it reaffirmed the interpretations of "necessary expert witnesses" set forth in *People v. Watson* and *People v. Glover*:

> "In analyzing the particular circumstances of each case, whether deciding statutory or constitutional issues, a standard has evolved that there must be some showing that the requested expert assistance is necessary in proving a crucial issue in the case and that the lack of funds for the expert will therefore prejudice the defendant." 163 Ill. 2d at 221, 644 N.E.2d at 1188, citing *People v. Watson* (1966), 36 Ill. 2d 228; *People v. Glover* (1971), 49 Ill. 2d 78; *People v. Kinion* (1983), 97 Ill. 2d 322.

Moreover, the supreme court in *Lawson* rejected the State's argument that any such additional requirements of prior identification of the expert and an estimate of his fee "ought to be grafted onto the present *Watson* and *Glover* analysis." (*People v. Lawson*, 163 Ill. 2d at 225, 644 N.E.2d at 1190.) The court stated:

> "[A] denial of expert assistance funding to a criminal accused, who has not yet identified the particular individual he wishes to hire and given an estimate of costs, but who has otherwise demonstrated his constitutional entitlement to such assistance, represents the elevation of form over substance. It would be ironic, indeed, if the right recognized in *Watson* and *Glover* was nar-

rowed such that its entitlement depended on whether an accused was able to name the particular expert he wished to hire and the price involved." 163 Ill. 2d at 224, 644 N.E.2d at 1189-90.

■ Initially, there is ample support for the conclusion that the defendant sufficiently demonstrated her entitlement to expert assistance funding. First, the record clearly establishes, and the State does not dispute, that she was in fact indigent at the time of her second prosecution. Although a private law firm represented her, that firm apparently provided its services on a *pro bono* basis.

Second, the record also establishes that expert testimony on the battered woman syndrome would have been "necessary in proving a crucial issue in the case," *i.e.*, the defendant's state of mind at the time of the killing. (*People v. Lawson*, 163 Ill. 2d at 221, 644 N.E.2d at 1188.) As stated above, it was undisputed that the defendant performed the killing act. Consequently, proof of her mental state would have been determinative of whether the killing was justified as being in defense of self or others, voluntary manslaughter based on provocation or an unreasonable belief in justification, or, as the jury in the first prosecution found, murder.

However, absent expert evidence relating to the battered woman syndrome, the evidence at trial would tend to belie the conclusion that she reasonably believed that deadly force was necessary to avoid imminent death or great bodily harm and thus undermine her claim of self-defense. The evidence would have established only that her husband was advancing toward her when she shot him. There was no evidence that he was armed with a weapon of any sort or that he otherwise threatened her with imminent force likely to cause death or great bodily harm. Under such circumstances, expert testimony establishing that the defendant suffered from the battered woman syndrome would have been crucial to show that her husband's behavior on January 26, 1986, behavior which might not ordinarily justify a lethal response, could justifiably have elicited such a response from her. See *People v. Sawyer* (1986), 115 Ill. 2d 184, 193, 503 N.E.2d 331, 335 ("In the context of self-defense, it is the defendant's perception of the danger, and not the actual danger, which is dispositive").

■ The State contends that the fees in this case were not shown to be necessary because the defendant pleaded guilty and Dr. Cavanaugh therefore did not testify. We disagree. Section 113—3(d), by its terms, does not require that an expert testify at trial. Moreover, the State cites no cases in support of its contention that Dr. Cavanaugh would have been required to testify for the defendant's right for reimbursement to accrue. Case law in fact suggests

otherwise. (See *People v. Lawson*, 163 Ill. 2d at 229, 644 N.E.2d at 1192 (stating that at the very least, an expert could have educated defense counsel as to the technicalities of a given field to make cross-examination more effective); *People v. Watson*, 36 Ill. 2d at 233, 221 N.E.2d at 648 (stating that the value of an expert's services lies primarily in his preparation).) Beyond this, we note that when the defendant originally moved the court for Dr. Cavanaugh's fee on March 18, 1992, the case was in fact in a trial posture. The parties were conducting discovery and there was no indication that the case would not proceed to a second trial.

■ We further disagree with the State's contention that expert testimony regarding the battered woman syndrome would have been unnecessary because the "defendant herself [could have] provided ample testimony concerning the abuse she had received from her husband." Any such testimony could only establish that abuse in fact occurred; it could not establish the effect of that abuse on the defendant's mental state. As noted above, the value of expert testimony regarding the battered woman syndrome is that it provides evidence of the effect of such abuse on a woman's mental state and therefore may aid the trier of fact in determining whether she reasonably believed that deadly force was necessary.

The State next argues that the alleged availability of a prior retained expert, Dr. Marilyn Grossman, to provide battered woman syndrome testimony rendered Dr. Cavanaugh's testimony superfluous and therefore unnecessary within the meaning of section 113—3(d). The State contends in its brief that Dr. Grossman examined the defendant in 1986 and determined that she suffered from the battered woman syndrome at the time of the killing.

■ We note that the defendant filed a motion with this court, which was taken with the case, requesting that all references to the availability of Dr. Grossman to testify at the defendant's second prosecution be stricken from the State's brief because the record lacks any evidence that she was in fact available. Our inspection of the record confirms the contention made in the defendant's motion. The record contains no evidence indicating that Dr. Grossman would have been available to testify at the defendant's second trial. Accordingly, we must disregard any reference to her alleged availability. (See *People v. Miller* (1993), 253 Ill. App. 3d 1032, 1035, 628 N.E.2d 893, 896 ("Matters not of record are not properly before a reviewing court and will not ordinarily be considered on appeal"); see also Supreme Court Rule 341(e)(7) (145 Ill. 2d R. 341(e)(7)) ("reference shall be made to the pages of the record on appeal or abstract, if any, where evidence may be found").) Moreover, the State concedes in its response

to the defendant's motion to strike that "[t]he argument concerning Dr. Grossman and her availability to testify was merely a subargument and was not the gravamen of the People's brief."[5]

Lastly, the State contended at oral argument, without having elaborated upon this point in its brief, that the defendant's failure to seek authorization from the trial court before retaining Dr. Cavanaugh precluded her from recovering his fee. This issue was squarely dealt with in *People v. Kinion*, which suggested a motion for fees in advance of retaining an expert as the preferable procedure:

> "[T]he best practice, although it was not followed here, is, where feasible, to require appointed attorneys to petition the trial court for any amount anticipated to be in excess of $250 before they spend it, and that attorneys who spend any excess which the court does not authorize should run the substantial risk of not receiving compensation for it." (97 Ill. 2d at 336, 454 N.E.2d at 631.)

■ However, as is manifest from *Kinion*, a case which upheld the award of expert's fees even though the best practice of making a request in advance was not followed, failure to move for expert's fees in advance will not be a ground for an outright denial of the fees sought. This is but another demonstration of the adage that "the best" should not become the enemy of the good.

To attribute such dispositive significance to the timing of the fee application as the State urges would, in the words of the court in *People v. Lawson*, constitute an "elevation of form over substance." (*People v. Lawson*, 163 Ill. 2d at 224, 644 N.E.2d at 1189-90.) Such a distinction could not be justified if a defendant otherwise demonstrates his entitlement to funding for an expert witness. In fact, a trial court may be able to more accurately analyze the reasonableness of a given fee from a hindsight perspective.

Having determined that the trial judge may not deny fees for defendants' experts once, as in this case, indigence and necessity have been established, the basis for the defendant's constitutional challenge to section 113—3(d) has been eliminated, and the issues raised need not be further addressed. See *People v. Mitchell* (1993), 155 Ill. 2d 344, 356, 614 N.E.2d 1213, 1218 ("Constitutional questions

---

[5]Although we do not consider Dr. Grossman's alleged availability here, that question may be relevant on remand with respect to the amount of a reasonable fee for Dr. Cavanaugh's services. See *People v. Kinion*, 97 Ill. 2d at 337, 454 N.E.2d at 632 ("While we do not intimate that it was unreasonable *per se* \*\*\* to [retain] four psychiatrists to testify to [the defendant's] sanity and fitness to stand trial \*\*\*, we have our doubts that [the expert fees sought here] were called for \*\*\*. We trust that the circuit court will take account of this \*\*\*").

will not be considered if the cause can be determined on other grounds"); *Anagnost v. Layhe* (1992), 230 Ill. App. 3d 540, 543, 595 N.E.2d 109, 110 (same).

The fact that the circuit court suspected that Dr. Cavanaugh's hours may have been exaggerated would, even if true, provide no justification for completely denying reimbursement of his fee. The court had before it a fully itemized billing statement and therefore could have denied payment for any services it found to be duplicative or otherwise unreasonable. Given that the defendant has shown her entitlement to at least some reimbursement, we cannot say that a zero fee award was proper.

CONCLUSION

For the reasons discussed above, the circuit court's denial of the defendant's motion for expert's fees is reversed and the matter remanded to the circuit court for a determination of a reasonable fee for Dr. Cavanaugh's services in accordance with the foregoing.

Reversed and remanded.

COUSINS, P.J., and McNULTY, J., concur.