2021 IL App (1st) 200968-U

FIFTH DIVISION
Order filed: July 16, 2021

No. 1-20-0968

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ORTEK, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 10529 |
| | ) | |
| VILLAGE OF MCCOOK, an Illinois municipality, | ) | Honorable |
| | ) | Michael Mullen, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We affirm the judgment of the circuit court over the plaintiff's contention that the court erroneously found that its claim for *quantum meruit* failed as a matter of law.

¶ 2  The plaintiff, Ortek, Inc. (Ortek), brought this action in the circuit court of Cook County against the defendant, the Village of McCook (Village), asserting, *inter alia*, a claim for *quantum meruit*. Following a bench trial, the circuit court entered judgment in favor of the Village. Ortek

appeals, arguing that the circuit court erred when it entered judgment in favor of the Village on its claim for *quantum meruit*. For the reasons that follow, we affirm.

¶ 3    The following facts were adduced from the evidence presented at trial and the orders of record.

¶ 4    Ortek operates a wastewater treatment plant where it refines or recycles used oils and oily waters into various products on a property located at 7601 West 47th Street in McCook, Illinois (the property). The property on which Ortek operates its business consists of 6.2 acres of land that is divided into three separate tax parcels: Property Index Numbers (PIN) 18-12-101-011-0000 (PIN 011); 18-12-1010000 (PIN 021); and 18-12-101-049-0000 (PIN 049). At 5 acres, PIN 011 is the largest of the three parcels. PIN 011 is also the primary point of ingress and egress for Ortek's customers. From approximately 2003 until September 2015, Ortek owned all three parcels. However, for more than 10 years, it failed to pay the real estate taxes that were due and owing on PIN 011.

¶ 5    In 2013, Cook County Industrial Properties, LLC obtained a Certificate of Purchase for PIN 011, as it was the highest cash bidder for the purchase of the delinquent taxes on PIN 011 at the 2013 tax scavenger sale. On September 8, 2015, the Village purchased the Certificate of Purchase for PIN 011 from Cook County Industrial Properties, LLC. Ortek did not exercise its statutory right to redeem PIN 011, and consequently, a Tax Deed was issued for PIN 011 and recoded by the Village on October 15, 2015. An order of possession was entered in favor of the Village on March 31, 2016. However, the effective date of the March 31, 2016 order was stayed until April 21, 2016.

¶ 6     After obtaining ownership of PIN 011, the Village began verbal discussions with Ortek's counsel, offering to allow Ortek to continue its operations on PIN 011 in exchange for Ortek remediating certain hazardous waste that was contained on PIN 011. Ortek did not initially follow-up on the Village's offer. During this time, Ortek continued to conduct its business on PIN 011, and the Village was not collecting any rent or taxes from Ortek.

¶ 7     On February 8, 2017, the United States Environmental Protection Agency (EPA) delivered a Notice of Potential Liability to Ortek's owner, Lowell Aughenbaugh, regarding the release of hazardous substances or the potential releases of hazardous substances at the property. The hazardous substances in question were contained in a waste tank designated as Tank 101, which is located on the southern perimeter of PIN 011. The notice required Ortek to remediate Tank 101 or Ortek and Aughenbaugh could potentially be liable for the costs of remediation performed by the EPA.

¶ 8     On February 15, 2017, the Village sent Ortek a one-sentence letter, advising Ortek that it would be "unable to enter the property on February 22, 2017, and thereafter." Ortek's counsel sent the Village an email, requesting that it be allowed to remain on PIN 011 so that it could avoid liability to the EPA and remediate Tank 101. In an email dated March 2, 2017, the Village agreed to grant Ortek a 90-day extension to remain on PIN 011. In the email, the Village's counsel, Vincent Cainkair, stated that this extension would be the last and that it was "predicated upon the good faith efforts of [Ortek] to remove the hazardous waste in Tank 101." The email goes on to list four documents that Ortek must supply to the Village: (1) an executed contract with an environmental consultant to prepare a remediation plan; (2) a remediation plan from the environmental consultant; (3) an executed contract with a company where the hazardous waste

will be disposed or treated; and (4) a manifest and other documentation showing that the hazardous material in Tank 101 has been moved off site in accordance with the remediation plan. Ortek accepted the offer. On March 30, 2017, Cainkair sent Ortek's counsel a follow-up email, informing him that he had not received any of the documents the Village requested as a condition of the extension.

¶ 9    On May 24, 2017, Cainkair sent another email to Ortek's counsel, informing him that the Village was willing to let Ortek remain on the property until September 1, 2017, under the following conditions: (1) the parties must create a schedule detailing the amount of waste that must be removed from PIN 011 each week to ensure that Tank 101 is emptied by September 1, 2017; (2) Ortek must obtain a letter of credit in the amount of $200,000; (3) Ortek must provide the Village with a chart showing the total amount of waste removed, which includes the date of removal and amount removed; (4) Ortek must provide the Village with an estimate of the amount of materials left in the tank; and (5) Ortek must provide the Village with a plan for removing the "sludge" at the bottom of Tank 101. The email also stated that Ortek would not be obligated to make any rent or tax payments to the Village while the remediation is on schedule. Ortek accepted the Village's offer to remain until September 1, 2017.

¶ 10    About a month later, Cainkar emailed Ortek on June 20, 2017, asking for a status report and stating that three weeks had passed without information regarding Ortek's remediation efforts with regard to Tank 101. After a brief email exchange, Ortek's counsel informed Cainkar that Ortek had removed 7000 gallons of sludge from Tank 101 during those three weeks, though the sludge was still located on PIN 011, and that 67,500 gallons of sludge remained in Tank 101. The Village, unsatisfied with Ortek's compliance with the May 24, 2017 agreement, sent Ortek a notice

on July 19, 2017, informing Ortek it was prohibited from accepting further product onto PIN 011 and that it must vacate PIN 011 by July 24, 2017.

¶ 11   On August 1, 2017, Ortek filed a two-count complaint against the Village, seeking a declaratory judgment that the March 31, 2016 order of possession was invalid and asserting a claim for tortious interference. Ortek also sought a temporary restraining order (TRO) against the Village, which was entered on August 7, 2017, and enjoined the Village from, *inter alia*, preventing Ortek access to PIN 021 and PIN 049 via PIN 011 until the court could hold a preliminary injunction hearing. An evidentiary hearing was held on May 1, 2018, after which the motion for a preliminary injunction was denied, and the TRO was dissolved.

¶ 12   Subsequently, Ortek amended its complaint to include claims for necessary easement by implication, necessary easement by implication (temporary), and *quantum meruit*. Relevant here, the claim for *quantum meruit* alleged that, from April 2016 until June 15, 2018, Ortek "performed various services relating to [PIN 011] to the benefit of the Village" in excess of $300,000. Specifically, the complaint alleged that Ortek performed the following services: (1) "Site repair and maintenance, dumpster/containment rental;" (2) "Heavy equipment rental, operation thereof and other equipment rental;" (3) "Site clean-up/remediation efforts including, but not limited to, oily groundwater 'pump-n-treat' and operation of the facility's waste water treatment plant;" (4) "Site ground sampling, compliance, management and permitting;" (5) "Industrial scale lease, calibration and certification;" (6) "Hiring of consultants regarding tank closures and other environmental matters;" (7) "Environmental monitoring, training, labor, and experience;" and (8) "Site security and emergency response preparedness." The complaint also alleged that Ortek did not perform these services gratuitously; the Village was aware of these services and did not instruct

Ortek to stop; and no contract for the services existed between Ortek and the Village. The Village filed an answer and asserted several affirmative defenses, which are not relevant to the disposition of this appeal.

¶ 13    The Village filed a motion for summary judgment on all counts, which Ortek opposed. Prior to the disposition of that motion, Ortek requested that the court dismiss its claim for declaratory judgment without prejudice. On June 24, 2019, the circuit court entered an order: (1) granting Ortek's motion to voluntarily dismiss its claim for declaratory judgment; (2) granting the Village's motion for summary judgment as to Ortek's claim for a necessary easement by implication (temporary) and entering judgment in its favor; and (3) denying the Village's motion as to Ortek's remaining three claims (tortious interference, necessary easement by implication, and *quantum meruit*). The matter then proceeded to a bench trial.

¶ 14    At trial, the court heard testimony from eight witnesses. Relevant to this appeal, the court heard testimony from Aughenbaugh, Ortek's president and owner. Aughenbaugh testified that, after the Village took ownership of PIN 011, Ortek and the Village reached an agreement. He described the agreement between Ortek and the Village as a "barter agreement," whereby Ortek was permitted to remain on PIN 011 and conduct its business rent and tax free in exchange for remediating Tank 101. He acknowledged that the Village did not agree to compensate Ortek for any of the remediation work it performed in either of the emails sent by Cainkair outlining the terms of the agreements. According to Aughenbaugh, Ortek continued to conduct its business and invoiced its customers over $1,000,000 in each of 2017 and 2018. He also acknowledged that Ortek did not pay any taxes on PIN 011 or any rent to the Village for those same years.

¶ 15    Regarding Ortek's *quantum meruit* claim, Aughenbaugh testified that he created a document that tracked Ortek's expenses related to PIN 011. The document, which was introduced into evidence to prove damages, lists several categories of services that correspond to the list of services Ortek alleged to have performed in its amended complaint. Aughenbaugh explained that, for each category, he estimated the amount of time his employees spent on the task to calculate the cost of labor. According to the document, the value of the services Ortek performed on PIN 011 totaled $856,106. When asked what specific types of services Ortek performed that benefitted the Village he provided the following answer:

> "Well, I'm going to be a little silly here but put a new flag up; right now the flag hasn't been changed for two years on their property. We mowed the grass, the grass hasn't been mowed for over a year. We made sure the electric stayed on to all the tanks so they didn't freeze up. We made sure the fire sprinklers didn't freeze up and blow up.
>
> We made sure that the storm water didn't spread contaminants all over. We made sure that if there was oil on the ground, or oil pond that the birds didn't fly into it and try to get a birdbath in oil because it kills them. We did those kinds of things."

¶ 16    On cross-examination, Aughenbaugh acknowledged that the work Ortek performed remediating PIN 011 after the Village became the owner was "similar" to the work it performed on PIN 011 prior to the Village obtaining ownership of the parcel in 2016. He explained that the work performed was "something you want to do because it makes the place look better" and that "[i]f you look good, that helps with [EPA] compliance."

¶ 17    After hearing arguments, the circuit court entered judgment in favor of the Village on all three of Ortek's remaining counts. Relevant here, the court found the following with regard to

Ortek's *quantum meruit* claim: (1) the agreement between Ortek and the Village was governed by express contracts, and therefore, Ortek's claim failed as a matter of law; (2) Ortek received substantial benefits from the agreements, including a waiver of rent, a waiver of taxes, and the ability to continue to conduct its business operations on PIN 011; and (3) any service Ortek performed on PIN 011 was meant to benefit itself, not the Village. The court also found that Ortek "fail[ed] to clarify what work it actually performed, when it was performed[,] and the reason(s) any such work was performed ***." According to the court, Aughenbaugh's testimony on this topic was "less than clear" and "incredibly confusing."

¶ 18     Ortek filed a motion asking the circuit court to reconsider its judgment in favor of the Village on its *quantum meruit* claim, arguing that the circuit court erred in finding that its claim failed as a matter of law because the evidence established that the express agreements between the parties governed only remediation of Tank 101, not the entirety of PIN 011. Absent an express agreement governing remediation of PIN 011, Ortek was entitled to reasonable compensation for the services it performed remediating PIN 011 for the Village's benefit. Ortek maintained that the evidence presented at trial established that it performed $856,106 worth of services remediating PIN 011.

¶ 19     The Village responded, arguing that the agreements between it and Ortek addressed both the remediation of Tank 101 and Ortek's continued presence on PIN 011 to conduct its business, and therefore, any services undertaken by Ortek were done pursuant to that agreement. The Village also argued that Ortek failed to offer competent evidence to establish what, if any, services it actually performed to remediate PIN 101 or how those services benefitted the Village.

¶ 20     The circuit court denied Ortek's motion to reconsider, and this appeal followed.

¶ 21    On appeal, Ortek argues that the circuit court erred when it entered judgment in favor of the Village on its claim for *quantum meruit*. Ortek does not challenge the court's decision in regard to any of its other claims.

¶ 22    At the outset, we must admonish the parties for failing to comply with the Illinois Supreme Court's rules governing briefs on appeal. Ill. S. Ct. R. 341(h), 342 (eff. Oct. 1, 2020). Rule 341(h)(3) states that the appellant's brief must include "a concise statement of the applicable standard of review for each issue, with citation to authority ***." Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020). Ortek's brief does not include a standard of review, nor does the Village's brief. See Ill. S. Ct. R. 342 (eff. Oct. 1, 2020) ("The brief for the appellee and other parties shall conform to the foregoing requirements, except that item[] *** (3) *** of paragraph (h) of this rule need not be included except to the extent that the presentation by the appellant is deemed unsatisfactory."). We remind the parties that supreme court rules are mandatory, and we reemphasize that this court is not a repository into which parties may foist the burden of argument and legal research. *Melamed v. Melamed*, 2016 IL App (1st) 141453, ¶ 21.

¶ 23    Turning now to the merits of Ortek's appeal, the term "*quantum meruit*," which means "as much as he deserves," is an expression used to describe the extent of liability on a "quasi-contract," *i.e.*, a contract implied in law. (Internal quotation marks removed.) *Archon Construction Co. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 30. A quasi-contract, or contract implied in law, is one where there is no actual agreement between the parties, but nonetheless a duty is imposed to prevent injustice. *Id.* As such, claims sounding in *quantum meruit* are predicated upon the reasonable value of the services performed. *Id.* To recover under a *quantum meruit* theory, a plaintiff must show (1) he performed a service to benefit the defendant, (2) he did not perform the

service gratuitously, (3) the defendant accepted the service, and (4) no contract existed to prescribe payment for the service. *Id.* ¶ 31. It is well established, however, that actions in quasi-contract, such as *quantum meruit*, are precluded when there is an express contract between the parties regarding the work that was performed. *Id.* ¶ 32 (citing *People v. Kinion*, 97 Ill. 2d 322, 332 (1983) ). "Simply put, if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law." *Id.* ¶ 33.

¶ 24    Ortek first challenges the circuit court's finding that its claim for *quantum meruit* failed as a matter of law because "there were express contracts governing the agreement between Ortek and [the Village] regarding PIN 011." Because the court's ruling involved the interpretation of an express agreement it considered to be unambiguous, our review of the court's ruling is *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005) ("the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law").

¶ 25    To begin, Ortek does not dispute that it entered into agreements with the Village regarding its continued presence on PIN 011 to conduct its business and that the terms of the agreements were outlined in two emails; rather, it argues that the agreements covered only Ortek's remediation of Tank 101, not the entirety of PIN 011. As such, Ortek maintains that it is entitled to reasonable compensation for the services it performed with regard to PIN 011, which are separate from its work remediating Tank 101, including: "24-hour security at the site;" "management of PIN 011;" "the repair of PIN 011;" "water remediation issues that became necessary on PIN 011;" "remedying ground water issues on PIN 011;" and "multiple emergency response efforts for PIN 011."

¶ 26    The Village responds that the circuit court did not err when it found that Ortek failed to prove its *quantum meruit* claim as a matter of law because the evidence showed that the express agreements between it and Ortek governed the same general subject matter as the services that form the basis of Ortek's claim. Specifically, the Village contends that the express agreements provided that Ortek could continue to conduct its business on the premises, which necessarily required it to maintain PIN 011 in such a condition that it was suitable for that purpose. We agree with the Village.

¶ 27    As this court has previously explained, when, as here, the parties have an express agreement, "a claim for *quantum meruit* lies when the work that the plaintiff performed was wholly beyond the subject matter of the contract that existed between the parties." *Archon Construction Co., Inc.*, 2017 IL App (1st) 153409, ¶ 39. In the instance case, the evidence at trial established that, through a series of agreements documented via email, the Village agreed to allow Ortek to remain on PIN 011 and conduct its business without having to pay rent or taxes in exchange for Ortek removing the hazardous waste in Tank 101 from the property.

¶ 28    The pertinent question, then, is whether the work for which Ortek is seeking compensation is wholly beyond the subject matter of that agreement. We find that it is not. The only evidence Ortek presented of work it performed on PIN 011 consisted of services that were attendant to its business operations on the site. For instance, Aughenbaugh testified that Ortek mowed the lawn, hired a security guard for the premises, and managed flooding that occurred on the premises. We also note that Ortek's business consisted of handling and storing hazardous material, and as such, maintaining the property in a suitable condition is essential for complying with applicable regulations. As Aughenbaugh testified, these were the type of services that Ortek undertook on

PIN 011 even before the Village took ownership because "it makes the place look better," which is helpful when trying to prove compliance with the EPA. Given this evidence, we conclude that the work Ortek performed on PIN 011 was not "wholly beyond the subject matter" of the agreements between it and the Village because the agreements contemplated that Ortek would continue operating its business on PIN 011 and the work Ortek performed was in furtherance of its business operations. Accordingly, the circuit court did not err when it found that, as a matter of law, Ortek's *quantum meruit* claim failed.

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.