NOTICE

Decision filed 03/15/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180007-U

NO. 5-18-0007

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 16-DT-54 |
| | ) | |
| EDNA G. BELL, | ) | Honorable |
| | ) | Allan F. Lolie Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's conviction for driving under the influence is affirmed where the trial court did not commit plain error when it failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); where the court did not abuse its discretion in denying the defendant's motion for appointment of an expert in a misdemeanor case; and where any error violating *Doyle v. Ohio*, 426 U.S. 610 (1976), was harmless.

¶ 2    The defendant, Edna G. Bell, was convicted by a jury of driving under the influence

(DUI) and sentenced by the trial court to two years' probation and two days in county jail.

The defendant appeals her conviction. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      On March 28, 2016, the defendant was the subject of a traffic stop by Officer Josh Douthit for failing to properly use a turn signal. The traffic stop resulted in the defendant being arrested for DUI based on probable cause stemming from her failure of the field sobriety tests, and she was transported to the Effingham County Sheriff's Department. Following observation, she was given a breath alcohol test. The test reported a blood alcohol concentration (BAC) of 0.164. She was subsequently charged with DUI and she pled not guilty to the charge.

¶ 5      On July 7, 2017, the defendant filed a motion for appointment of expert witness and a motion to suppress. The motion for appointment of an expert requested that the trial court enter an order appointing a qualified expert to conduct a mental examination of the defendant. The defendant asserted that she had a history of gastroesophageal reflux disease (GERD) and argued that an expert was needed to determine whether the breath test administered to the defendant was reliable in light of her medical condition. The other motion sought an order from the court suppressing all evidence related to the defendant's BAC and the breath test administered to her by Officer Douthit on March 28 at the jail. The defendant argued that she was experiencing an episode of GERD on that date, which was causing her stomach contents to enter her mouth, rendering the breath test inaccurate.

¶ 6      On July 24, 2017, the trial court held a hearing on the motion to appoint an expert witness. The defendant argued that an expert's findings with regards to the effect the defendant's GERD had on her BAC would help effectively prove her argument in the motion to suppress. However, the court pointed out that the right to an expert witness had

2

only been extended to capital and felony cases, citing a Third District case where a DIU defendant, charged with a misdemeanor, sought but was denied appointment of an expert as the case did not involve a capital or noncapital felony. *People v. Russell*, 385 Ill. App. 3d 468 (2008). Therefore, the court denied the motion as the defendant was charged with a misdemeanor, not a capital or felony offense, and was not entitled to the appointment of an expert. Following a subsequent hearing, the court also denied the defendant's motion to suppress, and the case moved forward to trial.

¶ 7 On October 30, 2017, during *voir dire*, the trial court explained to the prospective jurors that after reading aloud four principle statements, it would question each juror individually as to both whether they had heard those four principles and if they agreed with them and accepted them as being true. The court read the following:

> "Number one, the Defendant is presumed innocent of the charges against her. Number two, before a defendant may be convicted, the State must prove the defendant guilty beyond a reasonable doubt. The Defendant is not required to prove her innocence. Number three, the Defendant is not required to offer any evidence on her own behalf. Number four, if the Defendant chooses not to testify, her failure cannot be used against her."

Each prospective juror was then asked individually whether they had heard of the four principles and whether they accepted them as being true. When this questioning was complete, the court noted for the record that "all potential jurors, all 24, stated that they understood and accepted the four principles as being true." Jury selection was completed later that day.

¶ 8 The trial began the next day and the following evidence was presented. State Trooper Anthony Shovan, a certified breath alcohol technician, testified that his

responsibilities included maintaining the accuracy of the breath alcohol instruments at the Effingham County Sheriff's Department and that his log indicated the instruments had been serviced for accuracy by him in person.

¶ 9 Officer Josh Douthit testified that he was employed by the Effingham Police Department as a patrol officer. On March 28, 2016, at approximately 12:30 a.m., during his patrol, he conducted a traffic stop on the defendant. The defendant seemed to be "in a hurry" and made turns without using a turn signal. In speaking with the defendant, he noticed that her answers were delayed, she had thick-tongued speech, slurred speech, red bloodshot eyes, and there was an odor of alcohol coming from the vehicle. He asked if she had been drinking and she responded, "a little bit." He then conducted three field sobriety tests. The defendant gave maximum indications of intoxication on all three tests. The defendant was taken into custody and arrested for DUI. She was Mirandized, and her vehicle was impounded. She was transported to the Effingham County Sheriff's Department, where a breath test was administered to her. Prior to administering the test, Douthit checked that the machine was functioning properly by conducting a blank test, which returned a score of zero, indicating that the machine was in fact functioning properly. He then observed the defendant for 20 minutes in accordance with the administrative rules to ensure there was no mouth alcohol that might affect the results. At no time during the 20-minute observation period did he observe the defendant burping, belching, vomiting, throwing up, or anything that would indicate that the observation period needed to be restarted. After the observation period, he administered the breath test. The test was successful and returned a result of a BAC of 0.164 (more than twice the legal limit).

4

¶ 10    At the close of the State's evidence, the defendant moved for directed verdict, which the trial court denied.

¶ 11    The defendant testified that she was pulled over in the early morning of March 28, 2016.  She was coming from her son's father's house and driving to her apartment on Henrietta.  Prior to driving home, she consumed a bourbon and Coca-Cola that she had prepared.  She did not feel drunk when she left to drive home.  After being pulled over, she took three field sobriety tests.  She later also took a breath test, though doubted the results as she did not feel drunk.  She felt the inaccuracy in the test was due to mouth alcohol as she was experiencing symptoms caused by her GERD at the time of the test.  She was burping and "had stuff" in her mouth, but she did not spit it out in front of the officer nor did she "burp at him."  She remembered having acid reflux while she was sitting and talking with the officer at the Effingham station but did not have any outward symptoms.

¶ 12    On cross-examination, the State asked the defendant, "Did you ever at any point and time tell [the officer] about anything in your mouth?"  There was no objection, and the defendant answered, "No."  During closing argument, the State made several references to the defendant's failure to inform the officers about her acid reflux, including: "That was never mentioned on the night that she blew into this machine."  The defense objected, and the trial court called a sidebar, during which the defendant moved for a mistrial based on the State's argument as to the lack of prior statements by the defendant on the day of the offense.  Counsel argued that this violated her right to remain silent as not saying something could not be used against her in trial.  The motion for mistrial was denied, and the objection was overruled.  The State again referenced the lack of evidence on the defendant's acid

5

reflux and the defendant's failure to inform the officers of her condition on the day of the offense.

¶ 13    On October 31, 2017, the jury found the defendant guilty of DUI.  The defendant filed a motion to reconsider, arguing that (1) the evidence was insufficient for a reasonable jury to have found the defendant guilty beyond a reasonable doubt and (2) the court should declare a mistrial based on the State's reference to the defendant's silence regarding her condition after she was Mirandized.  The court denied the motion to reconsider, finding that the evidence of the defendant's intoxication was not closely balanced and any alleged error by the State was harmless.  The defendant was then sentenced to two years' probation and two days in county jail.  The defendant appeals.

¶ 14                                    II. ANALYSIS

¶ 15    The defendant raises three issues on appeal.  First, that the trial court committed plain error where it failed to adequately comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) when questioning potential jurors during *voir dire*.  Second, that the trial court abused its discretion in denying the defendant's motion to appoint an expert witness. Lastly, that the court erred in denying the defendant's motion for new trial where the State commented on the defendant's post-*Miranda* failure to disclose her acid reflux to officers.

¶ 16    As to the first issue, the defendant argues that the trial court's failure to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) constitutes plain error, and that this court should reverse her conviction and remand the case for a new trial.  Rule 431(b) requires that the court ask all potential jurors whether they understand and accept four fundamental principles of criminal law: (1) that defendant is presumed innocent of the

6

charges against her, (2) that the State must prove defendant guilty beyond a reasonable doubt, (3) that defendant is not required to offer any evidence on her own behalf, and (4) that defendant's decision to not testify cannot be held against her. *Id*. These four principles are commonly referred to as the *Zehr* principles. See *People v. Zehr*, 103 Ill. 2d 472 (1984). Rule 431(b) mandates:

> "a specific question and response process. The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010).

¶ 17 The defendant asserts, and the State concedes, that the trial court erred in administering the Rule 431(b) admonishments. Though the court advised the potential jurors about the *Zehr* principles, it did not inquire as to whether the jurors understood each of the principles. Therefore, the court's failure to comply constitutes error. See *People v. Mueller*, 2015 IL App (5th) 130013, ¶ 23. However, the defendant failed to make a timely objection and therefore forfeited this issue on appeal. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009). Having forfeited the issue, the defendant requests this court to review her claim for plain error.

¶ 18 Under the plain-error doctrine, a reviewing court may consider unpreserved error where: "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the

7

judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). Defendant carries the burden of persuasion under plain-error review. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Here, the defendant seeks review under the first prong.[1]

¶ 19    The first step is to determine whether a clear and obvious error occurred at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49. Here, as previously discussed, the trial court committed clear error in failing to comply with Rule 431(b).

¶ 20    Next, we must determine whether the evidence was closely balanced by evaluating the totality of the evidence and conducting a qualitative, commonsense assessment within the context of the case. *Id.* ¶ 53 (citing *People v. Belknap*, 2014 IL 117094, ¶¶ 50, 53). Defendant must show that "the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Id.* ¶ 51. If defendant meets this burden, then the error is prejudicial. *Id.*

¶ 21    Here, the defendant argues that the evidence was closely balanced because the jury's verdict was dependent on a credibility determination of conflicting witness testimony. We disagree.

¶ 22    The evidence introduced at trial against the defendant included both the witness testimony of the arresting officer and breath test results indicating that the defendant had a BAC of 0.164. When viewed in context, the evidence was not closely balanced. The

---

[1]A claim regarding a Rule 431(b) violation is not cognizable under the second prong of the plain-error doctrine unless there is evidence that the violation produced a biased jury. *People v. Sebby*, 2017 IL 119445, ¶ 52. As the defendant has made no such claim, we consider her claim of plain error under the first prong.

defendant has failed to demonstrate that the trial court's error potentially affected the outcome in this case, or that she was prejudiced. Therefore, we find no plain error.

¶ 23 The next issue raised by the defendant is whether the trial court abused its discretion in denying her motion for appointment of an expert witness. The State argues that the defendant was not entitled to an expert witness as she was charged with a misdemeanor— not a capital or felony offense.

¶ 24 We review a trial court's denial of a motion for an expert witness for an abuse of discretion. *In re Commitment of Lingle*, 2018 IL App (4th) 170404, ¶ 39. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000) (citing *People v. Illgen*, 145 Ill. 2d 353, 364 (1991)).

¶ 25 A trial court has the authority to appoint an expert witness at no cost to an indigent defendant pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3(d) (West 2016)) in a capital case, and may order the county pay for necessary expert witnesses "reasonable compensation *** not to exceed $250." This section was expanded by the supreme court to include noncapital felonies. *People v. Watson*, 36 Ill. 2d 228, 221 (1966). The supreme court also ruled that courts could exceed the $250 limit prescribed in the Code. *People v. Kinion*, 97 Ill. 2d 322 (1983). The defendant cites no case law extending this section of the Code providing for the court's appointment of and county's subsequent payment of fees for an expert witness in misdemeanor cases.

9

¶ 26    In *Russell*, the Third District addressed this issue and refused to expand the law to include misdemeanor cases. See *Russell*, 385 Ill. App. 3d 468. That case also involved an indigent defendant charged with a DUI whose motion for expert witness fees was denied by the trial court. In affirming the lower court, the appellate court reasoned that:

> "while the *Watson* court extended the applicability of such fees to felonies, the defendant has cited no case where a court stated that such fees were applicable to misdemeanors. There exists no authority for the expert witness fees in this case. The trial judge did not abuse his discretion in denying them. Defendant asks this court to expand the law to allow expert witness fees for a misdemeanor defense. We believe that it is the province of the legislature or the Illinois Supreme Court to make the drastic change in the law urged by defendant. We will not do so. The decision to deny expert witness fees is affirmed." *Id*. at 472.

¶ 27    Here, there is no question that the defendant was charged with a misdemeanor. Therefore, in accordance with the court's reasoning in *Russell*, we find that the trial court did not abuse its discretion in denying the defendant's motion for the appointment of an expert witness.

¶ 28    Lastly, the defendant argues that the trial court erred in denying the motion for a mistrial where her constitutional right to remain silent was violated when the State referenced her post-*Miranda* silence on cross-examination, in closing argument, and in rebuttal. Specifically, the defendant argues that the State repeatedly referred to her failure to inform officers of her GERD condition or that she was suffering symptoms on the day of the offense.

¶ 29    The due process clause of the fourteenth amendment prohibits a defendant from being impeached on the basis of her silence following her invocation of her right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976). In *Doyle*, the State attempted to

10

impeach the defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest. The Supreme Court concluded that it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618.

¶ 30 Based on our review of the record, we conclude that we need not determine whether the State's statements concerning the defendant's failure to disclose her symptoms or condition on the day of the offense constituted a *Doyle* violation, because the error, if any, was harmless. *Doyle* violations are subject to harmless error analysis. *People v. Hart*, 214 Ill. 2d 490, 517 (2005). Our supreme court has recognized the following five factors for courts to consider when determining whether a *Doyle* violation is harmless beyond a reasonable doubt: (1) the party who elicited the testimony concerning defendant's silence, (2) the intensity and frequency of the references to defendant's silence, (3) the State's use of defendant's silence, (4) the trial court's opportunity to grant a mistrial motion or to give a curative jury instruction, and (5) the other evidence establishing defendant's guilt. *Id.* at 517-18.

¶ 31 Here, the first and third factors weigh in the defendant's favor. The testimony regarding the defendant's silence was elicited by the State during cross-examination. Then, during closing argument and rebuttal, the State used the defendant's silence to argue that she was merely trying to avoid punishment and came up with the acid reflux condition as a way to do so.

¶ 32    However, the other three factors weigh in favor of the State.  The record indicates that there was only one question on cross-examination where the State asked if the defendant told officers about anything in her mouth.  All other statements the defendant complains of were made during closing argument and rebuttal.  Furthermore, during closing argument, the trial court had the opportunity to grant a mistrial—even though it was denied—and admonished the jury before and after closing argument that counsel's statements were not evidence.  Lastly, the other evidence presented at trial, specifically the officer's testimony regarding the field sobriety tests he administered to the defendant and the breath test results indicating the defendant's BAC to be 0.164, weighs most heavily against her.  Therefore, we find that any *Doyle* violation by the State was harmless beyond a reasonable doubt.

¶ 33                             III. CONCLUSION

¶ 34    For the foregoing reasons, we affirm the judgment of the Effingham County circuit court.


¶ 35    Affirmed.